EDWIN A. LOMBARD, Judge.
|! This devolutive appeal is from the trial court judgment granting summary judgment and dismissing the defendant’s third party claim against one of the plaintiffs insurers. After de novo review of the record in light of the applicable law and arguments of the parties, we affirm the judgment of the trial court.

Relevant Facts and Procedural History

Chateau Dijon Apartments, a large apartment complex in Metairie, sustained damage during Hurricane Katrina in 2005. CDJ Apartments, L.L.C. (“CDJ”), owner and operator of the complex, first hired SCS General Contractors, Inc., for the re *68 pairs but, in December 2005, terminated that contract and entered into a contract with Baseline Construction & Restoration of Louisiana, LLC (“Baseline”) to repair the damaged complex. The repair work was substantially completed in May 2007 but a dispute arose over payment and, accordingly, Baseline filed this lawsuit in July 2007 against CDJ and Favrot Realty Partnership d/b/a Chateau Dijon and Fav-rot I Trust No. 1.
In April 2008, CDJ, individually and as successor by operation of law to Favrot Realty and Favrot Trust, answered the petition and made a reconventional demand against Baseline, alleging a variety of construction problems attributable pto Baseline’s work. Shortly thereafter, in September 2008, the apartment complex sustained extensive roof and interior damage from Hurricane Gustav. Accordingly, in December 2008, CDJ amended its re-conventional demand to assert additional claims alleging that damages sustained in Hurricane Gustav were the result of Baseline’s faulty construction work. In addition, CDJ named three alleged liability insurers of Baseline, including Catlin Specialty Insurance Company (“Catlin”), as defendants in its action against Baseline.
In October 2009, Catlin filed the instant motion for summary judgment, arguing that the Commercial General Liability (“CGL”) policies at issue in this matter, covering two consecutive periods beginning in September 4, 2007, and ending on September 5, 2009, provided no coverage for the claims asserted by CDJ against Baseline because Baseline completed its work on the complex in May 2007 before the policy took effect and therefore Catlin had no duty to indemnify Baseline or any other party in this litigation. The trial court granted Catlin’s motion for summary judgment on May 28, 2010, dismissing all claims against Catlin.
CDJ did not appeal the dismissal of its reconventional demand against Catlin, but on July 27, 2010, Baseline filed this devolu-tive appeal,[1] asserting that there is a genuine issue of material fact as to whether the policies issued by Catlin provide coverage for claims asserted by CDJ against Baseline.

|aApplicable Law

A motion for summary judgment is properly granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits submitted, if any, show there is no genuine issue of material fact such that the mover is entitled to judgment as a matter of law. La.Code Civ. Proc. art. 966. On appeal, motions for summary judgment are reviewed de novo “using the same criteria that govern the trial court’s consideration of whether summary judgment is appropriate, ie., whether there is a genuine issue of material fact and whether the mover is entitled to judgment as a matter of law.” Supreme Services & Specialty Co., Inc., v. Sonny Greer, Inc., 06-1827, p. 4 (La.5/22/07), 958 So.2d 634, 638. The burden is on the mover to establish that no material fact issues exist but, where the movant will not bear the burden of proof at trial, the movant need only point out to the court that there is an absence of factual support for one or more elements essential to the adverse party’s claim. La.Code Civ. Proc. art. 966(C)(2); Greenhouse v. *69 C.F. Kenner Associates Ltd. P'ship, 98-0496, p. 4 (La.App. 4 Cir. 11/10/98), 723 So.2d 1004, 1007. Thereafter, the burden shifts to the adverse party to produce factual support sufficient to establish that a genuine issue of material facts exists such that summary judgment is not appropriate. Id. Only when reasonable minds must inevitably conclude that the mover is entitled to judgment as a matter of law on the facts before the court is a summary judgment warranted. Reynolds v. Select Properties, Ltd., (La.4/11/94), 634 So.2d 1180, 1183 (citation omitted). Summary judgment declaring a lack of coverage under an insurance policy is appropriate only when there is no reasonable interpretation of |4the policy, when applied to the undisputed material facts shown by the evidence supporting the motion, under which coverage could be afforded. Id.
Because an insurance policy is a contract between the parties, it is construed employing the general rules of interpretation of contracts set forth in the Louisiana Civil Code. Id. The parties’ intent, as reflected by the words of the policy, determines the extent of coverage. Id.; La. Civ. Code art. 2045. Words and phrases used in a policy are construed using their plain, ordinary and generally prevailing meaning, unless the words have acquired a technical meaning. Reynolds, supra (citation omitted); La. Civ.Code art. 2047. An insurance policy should not be interpreted in an unreasonable or a strained manner to enlarge or restrict its provisions beyond what is reasonably contemplated by its terms or to achieve an absurd conclusion. Reynolds, supra (citation omitted).
It is well settled that subject to the applicable rules of interpretation, insurance companies have the right to limit coverage in any manner they desire, so long as the limitations do not conflict with statutory provisions or public policy. Id. (citation omitted). Policy language that is clear, unambiguous, and expressive of the intent of the parties must be enforced as written. Id. (citation omitted). If an ambiguity remains after construing the policy language in accordance with the rules of construction, the ambiguous provision will be construed against the drafter and in favor of the insured but the court should not pervert the language or exercise its inventive powers to create an ambiguity where none exists or create a new contract for the parties. Id.

Discussion

In its motion for summary judgment, Catlin asserts that it is entitled to summary judgment because its CGL policies issued for the periods September 4, | b2007 to September 5, 2008, and September 5, 2008 to September 5, 2009 (Policy Nos. 1700500533 and 1700500533, respectively), do not provide coverage for claims asserted by the CDJ as a result of damages sustained on September 1, 2008, in Hurricane Gustav. In support of its motion, Catlin submits: (1) a copy of the “Notice of Termination of Work” sworn to by Clifford F. Favrot for CDJ certifying the work contracted for on December 30, 2005, with Baseline “is now substantially completed” as of May 7, 2007; (2) the “Request to File Acceptance of Contract” filed by D. Blair Favrot with the Jefferson Parish Clerk of Court on May 8, 2007; and (3) copies of the 2007-2008 and 2008-2009 CGL policies at issue.
The policies, which appear to be identical in all relevant parts, provide defense and indemnity coverage for damages that the insured becomes legally obligated to pay as a result of “bodily injury” and “property damage” to which the policy is applicable. Pursuant to the “Continuing Damage-Contractors” Exclusion, the poli *70 cies exclude coverage for “property damage” arising out of an “occurrence” that began (or is alleged to have begun) prior to the inception date of the policy or the first policy in a series of uninterrupted policies. In addition, the policies include the following endorsement:
Exclusion-Designated Work
This endorsement modifies insurance provided under the following:
COMMERCIAL GENERAL LIABILITY COVERAGE PART PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
SCHEDULE
Description of your work:
“Your Work” which was completed at any location prior to the effective date of this policy.
| RThis insurance does not apply to “bodily injury” or “property damage” included in the “products-completed operations hazard” and arising out of “your work” shown in the Schedule. [Emphasis in original]
Finally, the policy provides the following relevant term definitions:
Section V-Definitions
16. “Products-completed operations hazard”:
a. Includes all “bodily injury” and “property damage” occurring away from premises you own or rent and arising out of “your product” or “your work” except:
[[Image here]]
(2) Work that has not yet been completed or abandoned. However, “your work” will be deemed completed at the earliest of the following times:
[[Image here]]
(c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.
Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete will be treated as completed. [Emphasis in original]
In opposition to Catlin’s motion for summary judgment, Baseline argues that Cat-lin is not entitled to summary judgment because there is a disputed issue as to whether its work on the CDJ apartment complex was “completed” within the meaning of Catlin’s policy. Specifically, Baseline argues that the “Products-completed operations hazard” is only a category of insured risk and, in any event, because Baseline performed additional work that CDJ alleged was part of its contractual obligation in January 2008, making the 2007-2008 policy applicable to all of the work performed at the apartment complex. Baseline also suggests that the policy is applicable because Baseline only discovered that CDJ would be |7making claims against it for faulty subcontract work in August 2007, during the applicable policy period.
In reply to Baseline’s opposition, Catlin submits the following in further support of its motion for summary judgment: (1) the deposition testimony of Robert Oliver, manager of the architect firm hired by CDJ to oversee the project, stating that the “punch list” was completed (signifying that the project was substantially complete) prior to the May 7, 2007, filing of the Notice of Termination of Work”; (2) a letter dated May 7, 2007, from Baseline to CDJ stating that Baseline “has completed all of its contracted requirements”; (3) the April 8, 2008, deposition testimony of D. Blair Favrot stating that Baseline had *71 “been of the job a year” and that the “final turnover” of the property from Baseline to CDJ occurred in May 2007; and (4) a copy of the Motion for Partial Summary Judgment filed by CDJ stating that construction was completed when this litigation was initiated in July 2007.
Upon de novo review, we find no reasonable interpretation of the CGL policy at issue which could provide coverage for the claims asserted against Baseline by CDJ. The first effective date of the insurance policy was September 5, 2007, well after the contractual work completed (as defined by the policy) by Baseline in May 2007. There is no provision in the policies for coverage of property damage discovered during the policy period but based on work performed prior to the effective date of the policy. Moreover, although Baseline performed some corrective work on the complex during the policy period, by the clear terms of the definition section such work is treated as completed work and, thus, not covered under the policy.
| sBaseIine attempts to obfuscate the clear language of the policy by arguing that the “Products-eompleted operations hazard” provision in this policy is only a category of insured risk and, therefore, does not exclude coverage of the claims at issue here. However, words and phrases used in an insurance policy must be construed using their “generally prevailing meaning.” Cadwallader v. Allstate Ins. Co., 02-1637 (La.6/27/03), 848 So.2d 577, 580; see also La.Rev.Stat. 22:654 (insurance policy must be construed according to the entirety of its terms and conditions). Thus, Baseline’s novel interpretation of a standard provision of a CGL policy is insufficient to defeat Catlin’s motion for summary judgment. Even liberally construed, there is no reasonable interpretation of the policy that provides retroactive coverage for the claims at issue here. Accordingly, Catlin is entitled to summary judgment as a matter of law.

Conclusion

The judgment of the trial court is affirmed.
AFFIRMED.

. CDJ did not appeal the dismissal of its re-conventional demand against Catlin. On January 18, 2010, Catlin filed a motion to dismiss the appeal as untimely, but on January 28, 2011, the trial court signed the order of appeal. Catlin again moved to dismiss the appeal as untimely in this court, but the motion was denied. See Traigle v. Gulf Coast Aluminum Corp., 399 So.2d 183 (La.1981) (no appeal should be dismissed when motion for appeal is timely filed but court order not signed until after delay has run).