SANDRA CABRINA JENKINS, Judge.
LThe Plaintiff, Orleans Parish School Board (“OPSB”), and Intervenors, the Recovery School District, the Board of Elementary and Secondary Education, and the Louisiana Department of Education, appeal the trial court’s grant of summary judgment on behalf of Clarendon American Insurance Company (“Clarendon”), Essex Insurance Company (“Essex”), and Westchester Surplus Lines Insurance Company (“Westchester”).[1] At issue is the applicability of specific mold exclusions contained in excess insurance policies issued to OPSB. Based on our de novo review, we find that the trial court erred in its plain language analysis, interpretation, and conclusion that under the policy, “there is no coverage for damages due to mold, regardless of the potential source or initial contributing factor.” Additionally we find (1) material issues of fact exist regarding which damages can be said to have been caused by mold, and which damages can be considered otherwise-covered losses; (2) the only damages that would be excluded from coverage are consequential damages that occurred as a direct result of the presence of the mold; and (3) the anti-concurrent cause provisions cannot operate to exclude coverage for damages initially attributable to a covered loss. The judgment of the trial court granting summary judgment to Westchester, Clarendon, 12and Essex is therefore reversed, and this matter is remanded for further proceedings consistent with this opinion.
BACKGROUND AND PROCEDURAL HISTORY
Hurricane Katrina hit the New Orleans region on August 29, 2005, causing extensive damage to property owned and operated by OPSB. At the time of the storm, OPSB had four layers of property insurance coverage. Lexington Insurance Company (“Lexington”) provided the primary coverage of $50 million per occurrence; Clarendon and Essex shared the first layer of $25 million in excess coverage; Westchester provided the second layer of excess coverage of $25 million; and RSUI provided the final excess layer of $100 million. OPSB initially filed this lawsuit against Lexington, as its primary insurer, and against all four excess insurers. The case was removed to federal court, and then remanded back to state court.[2] *789 The Recovery School District, the Board of Elementary and Secondary Education, and the Louisiana Department of Education intervened in the lawsuit.
The excess insurers, Clarendon, Essex, Westchester, and RSUI, filed partial motions for summary judgment arguing that their policies contain exclusions that deny coverage for mold. They argued that as a result, OPSB could not recover for loss or damage caused by, arising out of, or resulting from fungus, mold, or mold-related damages,[3] regardless of the cause. They conceded that their excess policies generally followed the primary policy issued by Lexington, but argued that each excess policy was also subject to the terms, conditions, exclusions and limitations |3contained in the excess policies themselves.[4] OPSB responded arguing that the policies excluded coverage for damage caused by mold, but did not exclude coverage for mold as the damage itself where the mold was caused by a covered event.
On October 18, 2011, the trial court granted summary judgment in favor of Clarendon, Essex, and Westchester, but denied summary judgment as to RSUI. In its Reasons for Judgment, the trial court stated that the Clarendon, Essex, and Westchester policies were “clear and unambiguous” and “expressly exclude coverage for mold.” Based on its interpretation of the plain language of those policies, the trial court found that there was “a lack of coverage for damages due to, caused by, or consisting [of] mold.” It also rejected OPSB’s argument that the mold exclusions do not apply to mold caused by perils otherwise covered under the policies. Using a plain language analysis, the trial court stated, “[s]imply put, there is no coverage for damages due to mold, regardless of the potential source or initial contributing factor.” The following rationale was given in support of the trial court’s findings:
If the excess insurers wanted to provide coverage for mold damages due to a covered peril, they would have indicated that in the plain language of their respective policies; but they did not. Instead, they said things such as “[t]his exclusion applies regardless whether there is (b) any insured peril or cause, whether or not contributing concurrently or in any sequence,” and “[a]ny such loss described above is excluded, regardless of any other cause or event that contributed concurrently or in any sequence to the loss”. [Emphasis in original].
14As to RSUI, the trial court found that while the language in the RSUI exclusion was also clear, its liability for mold/fungus damages would be triggered only after certain conditions were satisfied, including a finding that the mold resulted from a covered loss.[5] The trial court found that determining whether or not mold resulted from a covered loss presented a genuine *790 issue of material fact, and denied RSUI’s summary judgment. This timely appeal follows.[6]
We will summarily address the issues raised by OPSB by first examining the scope of the mold exclusions, and in particular, whether there is a distinction between damage caused by mold, and mold as the damage. We will then examine the proper application of the anti-concurrent cause provisions within the mold exclusions which state that there is no coverage for mold, regardless of any other cause or event contributing concurrently or any sequence to the loss.
STANDARD OF REVIEW
The motion for summary judgment is a procedural device “designed to secure the just, speedy, and inexpensive determination of every action” where there is no genuine issue of material fact regarding all or part of the relief prayed for. La. C.C.P. art. 966(A)(2); Samaha v. Rau, 2007-1726, pp. 8-4 (La.2/26/08), 977 So.2d 880, 882-83. While courts may grant summary judgment solely on the issue of insurance coverage, summary judgment declaring a lack of insurance coverage under an insurance policy may not be rendered unless there is no reasonable interpretation of the policy, when applied to the undisputed facts shown by the |sevidence supporting the motion, under which coverage could be afforded. Reynolds v. Select Properties, Ltd., 93-1480 (La.4/11/94), 634 So.2d 1180, 1183; Westerfield v. LaFleur, 493 So.2d 600, 605 (La.1986). In addition, if a genuine issue of material fact exists, then summary judgment must be rejected. Oakley v. Thebault, 96-0937, p. 3 (La.App. 4 Cir. 11/13/96), 684 So.2d 488, 490. A material fact is generally one that can “potentially ensure or preclude recovery, affect the litigant’s ultimate success, or determine the outcome of a legal dispute.” Prado v. Sloman Neptun Schiffahrts, A.G., 611 So.2d 691, 699 (La.App. 4 Cir.1992).
Appellate courts review summary judgments under the de novo standard of review, using the same standard applied by the trial court in deciding the motion for summary judgment; as a result, we are not required to analyze the facts and evidence with deference to the judgment of the trial court or its reasons for judgment. Cusimano v. Port Esplanade Condominium Ass’n, Inc. 10-0477, p. 4 (La.App. 4 Cir. 1/12/11), 55 So.3d 931, 934; Lingoni v. Hibernia Nat’l Bank, 09-0737, p. 3 (La.App. 4 Cir. 3/3/10), 33 So.3d 372, 375; Hutchinson v. Knights of Columbus, Council No. 5747, 03-1533, p. 5 (La.2/20/04), 866 So.2d 228, 232, n. 2. “While a trial court’s reasoning for granting a summary judgment may well be informative, it is not determinative of the legal issues to be resolved by the appellate court.” Cusimano, pp. 4-5, 55 So.3d at 934. We therefore look at the record before us and make an independent determination regarding whether there are genuine issues of material fact that would preclude granting the summary judgment. Marigny v. Allstate Ins. Co., 1995-0952 (La.App. 4 Cir. 1/31/96), 667 So.2d 1229.
lfiMoreover, in reviewing summary judgments, we remain mindful of which party bears the burden of proof. “Although the burden of proof on a motion for summary judgment remains with the moving party, the mover’s burden changes depending *791 upon whether he or she will bear the burden of proof at trial on the matter that is the subject of the motion for summary judgment.” Johnson v. State Farm Ins., p. 2, 08-1250 (La.App. 3 Cir. 4/1/09), 8 So.3d 808, 810. Article 966(C)(2) provides:
The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant’s burden on the motion does not require him to negate all essential elements of the adverse party’s claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party’s claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.
Thus, the burden of proof does not shift to the party opposing summary judgment until the moving party first presents a prima facie case that no genuine issues of material fact exist. Oakley, p. 3, 684 So.2d at 490. At that point, if the party opposing the motion fails to produce evidence sufficient to show that he will be able to satisfy his burden of proof at trial, there is no genuine issue of material fact, and the mover is entitled to summary judgment as a matter of law. La. C.C.P. art. 966(C)(2); Oakley, p. 3, 684 So.2d at 490; Lomax v. Ernest Mortal Convention Center, 2007-0092, pp. 2-3 (La.App. 4 Cir. 7/11/07), 963 So.2d 463, 465.
| INSURANCE POLICY INTERPRETATION
The language which the excess insurers rely on to deny coverage for mold is provided below:
Exclusion by Lexington[7]
The primary insurance policy issued by Lexington provides that the “Covered Causes of Loss” include “RISKS OF DIRECT PHYSICAL LOSS unless the loss is ... [ejxcluded in Section B., Exclusions .... ” Section B, in turn, states, “[w]e will not pay for loss or damage caused by or resulting from any of the following: ... fungus, decay....” Additional language addressing the policy’s exclusion for mold is contained in an endorsement to the policy. The endorsement states:
MOLD/FUNGUS EXCLUSION
The Company shall not be liable for any loss or damage caused by, arising out of, contributed to, or resulting from fungus, mold(s), mildew, or yeast; or any spores or toxins created or produced by or emanating from such fungus, mold(s) or yeast;
(a) fungus includes, but is not limited to, any of the plants or organisms belonging to the major group fungi, lacking chlorophyll, and including mold(s), rusts, mildews, smuts and mushrooms;
(b) mold(s) includes but is not limited to, any superficial growth produced on damp or decaying organic matter or on living organisms, and fungi that produce mold(s);
(c) spores means any dormant or reproductive body produced by or arising or emanating out of any fungus, mold(s), mildew, plants, organisms or microorganisms ...
regardless of any other cause or event that contributes concurrently or in any sequence to such loss.
| /The last sentence is what is referred to as the anti-concurrent cause provision of *792 the policy (hereinafter also referred to as the “ACC clause”). Similar language is included in each of the excess policies at issue before us, as outlined below.
Exclusion by Essex[8]
The language at issue in the excess policy issued by Essex, who provided the first layer of excess coverage, is as follows:
MOLD/ORGANIC PATHOGEN EXCLUSION
This policy does not insure any loss, damage, claim, cost, expense, removal, restoration, or other sum either directly or indirectly arising out of or relating to:
Mold, fungus, organic pathogens, my-cotoxin, virus, mildew, spores or other microorganisms of any type or any hazardous substance as classified by the EPA.
This exclusion applies regardless whether there is (a) any physical loss or damage to insured property; (b) any insured peril or cause, whether or not contributing concurrently or in any sequence; (c) any loss of use, occupancy or functionality; or (d) any action required, including but not limited to repair, replacement, removal, cleanup, abatement, disposal, relocation, or steps taken to address medical or legal concerns.
Exclusion by Clarendon[9]
Clarendon jointly provided the first level of excess insurance coverage to OPSB. The language at issue in its policy stated:
The. following clauses are added to this policy and take precedence over any other wording contained in this policy. This policy does not apply to any loss or damage caused by or resulting from the actual or threatened existence, growth, release, transmission, migration, dispersal or exposure to “Mold”, “Spores”, or “Fungus”.
“Mold”, “Spores”, or “Fungus” means any mold, spores, or fungus of any type that can cause or threaten physical damage, deterioration, loss of use or loss of value or marketability, to any tangible property whatsoever. This | flincludes, but is not limited to, any type(s) of mold, spores, or fungus that is damaging or potentially damaging to tangible property-
Nor does this policy apply to the cost of removal, disposal, decontamination or replacement of Insured property which has been contaminated by mold, spores, or fungus and by law or civil authority must be restored, disposed of, or decontaminated.
Any such loss described above is excluded, regardless of any other cause or event that contributed concurrently or in any sequence to the loss.
Exclusion by Westchester[10]
Westchester provided the second layer of excess coverage. Its policy stated:
ADDITIONAL EXCLUSION — FUNGUS, WET ROT, DRY ROT AND BACTERIA
A. The following exclusion is added:
We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any cause or event that contributes concurrently or in any sequence to the loss:
“Fungus”, Wet Rot, Dry Rot and Bacteria — Presence, growth, proliferation, *793 spread or activity of “fungus,” wet rot or dry rot or bacteria. But if “fungus” wet rot, dry rot or bacteria results in a “specified cause of loss”, we will pay for the loss or damage caused by that “specified cause of loss.” This exclusion does not apply when “fungus”, wet or dry rot or bacteria results from fire or lightning. Enforcement of any ordinance or law which requires the demolition, repair, replacement, reconstruction, remodeling or remediation of property due to contamination by “pollutants”, or due to the presence, growth, proliferation, spread or any activity of “fungus”, wet or dry rot or bacteria; or
The cost associated with the enforcement of any ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any was respond to, or assess the effects of “pollutants”, “fungus”, wet or dry rot or bacteria.
B. The following is added to the Definitions
“Fungus” means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or byproducts produced or released by fungi.
|10We must examine the mold exclusions at issue in light of Louisiana law governing the interpretation of insurance contracts. An insurance policy is a contract between the parties and should be construed employing the general rules of interpretation set forth in the Louisiana Civil Code. Hebert v. Webre, 08-0060, p. 4 (La.5/21/08), 982 So.2d 770, 773. One provision of a contract should not be construed separately at the expense of disregarding other provisions. See, La. C.C. art 2050; Sims v. Mulheam Funeral Home, Inc., 07-0054, p. 8. (La.5/22/07), 956 So.2d 588, 589; Peterson v. Schimek, 98-1712, p. 5 (La.3/2/99), 729 So.2d 1024, 1029. Neither should an insurance policy be interpreted in an unreasonable or strained manner so as to enlarge or to restrict its provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion. Sims, 07-0054, at 8, 956 So.2d at 589; Peterson, 98-1712, at 5, 729 So.2d at 1028.
It is well settled that subject to the applicable rules of interpretation, insurance companies have the right to limit coverage in any manner they desire, so long as the limitations do not conflict with statutory provisions or public policy. Baseline Const. & Restoration of Louisiana, L.L.C. v. Favrot Realty Partnership, 11-0820, p. 4 (La.App. 4 Cir. 1/25/12), 86 So.3d 66, 69. Language in an insurance policy that is clear, expresses the intent of the parties, and does not violate a statute or public policy, must be enforced as written. La. C.C. arts.2045-2057. If the insurance policy is susceptible of two or more reasonable interpretations, then it is considered ambiguous and must be liberally interpreted against the drafter in favor of coverage. Weintraub v. State Farm and Cas. Co., 08-0351, p. 3 (La.App. 4 Cir. 10/29/08), 996 So.2d 1195, 1197. The insurer bears the burden of proving the | n applicability of policy exclusions. Tsilimos v. Gulf Marine and Indus. Supplies, Inc., 07-0998, p. 2-3 (La.App. 4 Cir. 1/16/08), 976 So.2d 246, 248.
DISCUSSION
On appeal, OPSB primarily argues that the trial court erred in granting summary judgment in favor of Clarendon, Essex, and Westchester because the court failed to recognize the important distinction between damage or loss caused by mold, and mold as the loss or damage. According to OPSB, as long as the mold resulted from an otherwise covered loss under the policies (such as wind or wind-driven rain), the policies should be interpreted to include *794 coverage for mold. In addition, it argues that the ACC clauses included in the mold exclusions should not be interpreted to eliminate coverage for damages initially sustained due to a covered loss.
Westchester counters that the plain language of the insurance policies unambiguously excludes coverage for all loss or damage caused by mold, regardless of whether a covered event such as wind or wind-driven rain preceded or contributed to the growth of the mold. According to Westchester, the only exception would be coverage for property that was already a total loss before mold developed on the property.[11]
While Louisiana courts have examined many issues regarding Hurricane Katrina claims involving issues of the applicability of insurance policy language, Lathis case presents issues of first impression before this court. For that reason we examine jurisprudence interpreting similar mold exclusions from our brethren courts.
Mold as a Loss versus Mold as a Cause of Loss
OPSB cites to several cases in support of its contention that there is a distinction between loss or damage caused by mold, and mold as the loss or damage. For example, in Liristis v. American Family Mutual Insurance Co., 204 Ariz. 140, 61 P.3d 22 (Ariz.Ct.App.2002), the insured filed a lawsuit against their homeowners’ insurer seeking to recover for mold damage allegedly resulting from fire and water used to extinguish the fire. The insurer was dismissed on summary judgment, based on the language of its policy which it claimed plainly excluded damages related to mold. The policy stated:
We do not cover loss to the property ... resulting directly or indirectly from or caused by [mold]. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss.
Liristis, 204 Ariz. at 144, 61 P.3d at 26. On appeal, the plaintiffs argued that the policy did not exclude coverage for mold caused by covered events; rather, it excluded coverage for damage caused by mold. The parties agreed that mold could be both a loss and cause of loss,[12] but disagreed as to the extent of the distinction.
The court ruled in favor of the plaintiffs, concluding that “mold damage caused by a covered event” was covered under the policy, while “losses caused by mold” were excluded. Id., 204 Ariz. at 143, 61 P.3d at 25. It further found that if the insurer “had intended to exclude not only losses caused by mold but also mold itself it could have easily expressed that intention.” Id., 204 Ariz. at 144, 61 P.3d at 26. Comparing the language to other exclusionary language used in insurance cases, the court pointed out that the insurer could have added a phase such as “either consisting *795 of, or” to its exclusionary language, such that loss “ ‘consisting of mold as well as loss caused by mold would be subject to this restrictive language.” Id.[13]
In Simonetti v. Selective Insurance Co., 372 N.J.Super. 421, 859 A.2d 694 (N.J.Super.Ct.App.Div.2004), the insured’s home sustained water damage following a heavy rainstorm as a result of design and waterproofing defects in the construction of their home. The insurers denied coverage under various provisions of the policy, including a mold exclusion which stated “[w]e do not insure, however, for loss caused by ... mold,” and the trial court entered summary judgment in favor of the insurers. Id., 859 A.2d at 695, 699. The appellate court reversed, observing that mold can be both a loss and a cause of loss. It found that the language of the policy focused only on losses caused by or resulting from mold, not circumstances in which there is a covered cause of loss resulting in mold. The court held:
We, therefore, conclude that if plaintiffs prove the mold resulted from a covered peril, then the cost of removing the mold is not a loss separate from, or caused by, the mold itself, but rather is within the coverage provided to the homeowners under defendant’s policy. In other words, when a covered event causes mold, the mold damage includes the cost of removal.
Id., 859 A.2d at 699.
A Kentucky court reached a similar conclusion in Reynolds v. Travelers Indemn. Co. of America, 233 S.W.3d 197 (Ky.Ct.App.2007). There, a provision in the homeowners’ insurance policy simply excluded “loss caused by ... mold.” The Kentucky court held that the policy did not preclude coverage for the homeowners’ claim for mold removal because the mold was a direct and proximate result of theft of the insured’s refrigerator — a covered peril.
Although the court reached the opposite conclusion regarding coverage, Siegel v. Chubb Corp., 33 A.D.3d 565, 566, 825 N.Y.S.2d 441 (2006), another case cited by OPSB, further supports its position that there are distinct differences between losses caused by mold and mold as a loss. In Siegel, at issue was coverage for damages to the insured caused by high levels of toxins in the air. The court determined that mold itself was the cause of the insured’s loss and therefore excluded by the policy language, excluding “any loss caused by ... mold.” Id. The term “caused by” was defined as “any loss that is contributed to, made worse by, or in any way results from that peril.” Id. Although the insured asserted the loss was caused by toxins in the air as opposed to mold, the court disagreed, finding that mold caused the toxins and therefore the loss.
In response to OPSB’s argument, West-chester cites a Louisiana case wherein the court excluded coverage in spite of the plaintiffs’ attempt to distinguish between a particular injury as the loss or damage, and the injury as the cause of the loss or damage. In Ross v. C. Adams Const. & Design, 10-852 (La.App. 5 Cir. 6/14/11), 70 So.3d 949, the plaintiffs sought to recover damages from an insurance policy for defective Chinese drywall they alleged emitted gases which caused extensive damage to their home, including corrosion of wiring, plumbing, | lsappIiances, and jewelry. Although the policy contained a provision excluding losses caused by corrosion, the plaintiffs argued that the damages were not caused by corrosion, but the damages were the corrosion itself. Id. at p. 10, 70 *796 So.3d at 954 (emphasis added). The appellate court rejected the plaintiffs’ argument, finding that the policy clearly “[did] not insure for loss caused by rust or corrosion.” Id.
In Ross, the insurer had sought summary judgment under four separate exclusions. In addition to the corrosion exclusion, the insurer argued that coverage was excluded for loss caused by faulty materials (because the drywall was faulty, inadequate, or defective); loss caused by latent defect (because the drywall contained a latent defect); and loss caused by pollution (because the drywall emitted sulfuric gas). Id. at p. 4, 70 So.3d at 951. After the trial court granted summary judgment without reasons, the court of appeal affirmed the judgment finding that coverage was excluded on all four grounds. What distinguishes Ross from cases cited by OPSB is that because each of the other exclusions separately prohibited coverage for the drywall-induced damages, there was no otherwise-covered loss which could be said to have caused the plaintiffs corrosion-related damages.
Similarly, in Orthopedic Practice, LLC v. Hartford Casualty Ins. Co., 06-8710, 2008 WL 687184 (E.D.La. Mar. 10, 2008) (unpublished), another case cited by West-chester, the court granted summary judgment to the insurer based on an exclusion that stated the insurer would not pay for “loss or damage caused by or resulting from” rust, fungus or mold. In Orthopedic Practice, the plaintiffs office was located in the second floor of a medical center building which flooded as a [16result of Hurricane Katrina. The flood water did not reach the second floor and there was no indication of wind-driven rain damage. Nevertheless, the plaintiff sought damages from its insurer for equipment that sustained mold damage as a result the storm and its aftermath. The insurer denied coverage. On the insurer’s motion for summary judgment, the court noted that the policy excluded mold damage, but it also noted that there was no evidence of any direct physical damage to plaintiffs property, presumably meaning that there was no initially covered loss that could be said to have caused the mold. As a result, the court granted the insurer’s motion for summary judgment.
In the case before us, each of the insurance policies at issue contains language excluding coverage for damages “caused by” mold. The underlying Lexington policy states, “We will not pay for loss or damage caused by or resulting from” mold. The Essex policy “does not insure any loss, damage, claim, cost, expense, removal, restoration, or other sum either directly or indirectly arising out of or related to” mold. The Clarendon policy states, “This policy does not apply to any loss or damage caused by or resulting from the actual or threatened existence, growth, release, transmission, migration, dispersal or exposure to” mold. The Westchester policy states, “We will pay for loss or damage caused directly or indirectly by” mold.
Although they could, none of the policies simply say: we do not pay for mold, or, we do not pay for damages “consisting of’ mold. Rather, they include modifying language such as “caused by” and “arising out of’ that change what would otherwise be a broad exclusion against coverage for mold, to exclusions eliminating damages arising as a result of the presence of mold. Because of the |17nature of these modifiers, we agree with our brethren courts that there is a distinction between mold as a loss and mold as a cause of the loss that must be recognized.
Despite recognition of this distinction, we nonetheless disagree with OPSB’s assertion that this in turn means that all *797 mold-related damages would be covered under the policies as long as the mold resulted from a covered loss. Despite OPSB’s phrasing of the issues, we do not believe that the inquiry into the extent of coverage under the policies involves the mere parallel juxtaposition of the two questions: whether mold is the loss, or whether mold causes the loss. This is because mold, arguably, will have always been caused by something, and can always potentially lead to some other damage— whether that be an odor, an infection or illness, further property damage, or remediation costs. We believe that posing the question as one of two alternatives amounts to an oversimplification of the complex processes that can result in a chain-like development of damages, where one event leads to a loss, that leads to another loss, and so on.
Instead, we recognize that the growth of mold is usually sparked by some moisture-related trigger, whether a covered event or not. Therefore the better question to us appears to be one rooted in a linear analysis: are there any damages along the sequential chain of losses caused wholly or in part by mold? In other words, once mold appears — for whatever reason — what additional damages can be attributed in some way to the presence of the mold? It is these damages that we believe the mold exclusion prohibiting recovery for damages “caused by” mold are designed to address.
|1sWe point out this distinction because OPSB’s argument suggests that in some instances, mold can just appear and cause damages in the absence of any initial peril causing the mold. In other words, OPSB seems to argue that mold can either be (1) caused by a covered peril; (2) caused by a non-covered peril, or (3) mold can just form absent any specific cause. OPSB claims that there is coverage for any and all damages related to mold under the first scenario, while coverage would be excluded under the latter two scenarios. In addition, according to OPSB’s position, it is the third scenario that is covered by the term, damages caused by mold, while mold would be the loss or damage under the other two scenarios. To the extent that this is the argument OPSB makes, that argument has no merit. Mold can presumably always be attributed to something. The moisture sparking the growth of mold has to come from somewhere. What the mold exclusion instead limits is coverage for damage that is attributed to the mold itself, rather than to the initially covered peril.
Using this analysis, once mold develops, the question of whether mold, as the damage itself, is covered is an inquiry into whether what led to the development of mold is a covered loss under the policy. If the event triggering the growth of mold is a covered loss under an insurance policy, then the mold is also covered and the question becomes: what other damages have resulted solely as a result of the mold which would not have been present but-for the presence of mold. Conversely, if the triggering event is not a covered loss, then both the mold itself, and any resulting damages would likely be excluded from coverage.
Based upon our finding that there is a distinction between damages caused by mold and mold as the damage that must be recognized, we now examine the |1flanti-concurrent cause language contained in the policies before us. It is this language that Lexington claims broadens the mold exclusions such that all mold-related damage is excluded, regardless of the initial cause.
Application of ACC Clauses
The ACC clauses in Lexington, Clarendon, and Westchester policies are essentially identical to each other. West-chester’s ACC clause, for instance states, *798 “Such loss or damage is excluded regardless of any cause or event that contributes concurrently or in any sequence to the loss.” The language in the Essex policy is slightly different. It states, “This exclusion applies regardless whether there is ... any insured peril or cause, whether or not contributing concurrently or in any sequence.” It also applies in the Essex policy regardless of whether there is “any action required, including but not limited to repair, replacement, removal, cleanup, abatement, disposal, relocation, or steps taken to address medical or legal concerns.”
A review of the plain language of the ACC clauses leads us to believe that the purpose of the clauses is not to exclude coverage from mold damage that would otherwise be covered under the policy as attributed to a covered loss. Rather, the ACC clauses operate to exclude coverage for damages incurred as a direct result of the appearance of mold, regardless of whether those particular elements of damage would have occurred as a result of some other covered loss. In other words, there may be damages that can be traced particularly to mold, such as remediation or medical costs related to respiratory problems,[14] that still would be excluded even if some other event could be said to have contributed to such particular loss. For 12f|instance, if the damage not covered on the grounds that it is attributed to mold is the cost of remediation, then it would not matter if the property also needs to be remediated due to some other event, such as the presence of another toxic substance like asbestos. The cost of remediation would still be excluded under ACC clauses. Similarly, if a person claims to have developed respiratory damages as a result of the presence of mold, it would not matter that the person also alleges that another event such as defective drywall, contributed to their medical injury. There still would be no coverage — regardless of whether the concurrently contributing event was a covered loss. This plain language interpretation of the policy aligns with the cases cited by both OPSB and Lexington, and with the public policy concerns that must be considered in resolving this issue.
OPSB cites three cases in support of their position that it would be absurd to interpret the ACC clauses so broadly that there would be no coverage for mold-related damages caused by a covered loss.
In Stewart Enterprises, Inc. v. RSUI Indemnity Co., Inc., 614 F.3d 117 (5th Cir.2010), the United States Fifth Circuit Court of Appeals, applying Louisiana law, determined that an ACC clause did not bar the insured’s recovery for damage caused by a combination of flood and wind where the clause stated:
This policy does not insure against loss or damage caused directly or indirectly by any of the excluded perils. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.
Id. at 125. RSUI argued that the policy plainly excluded liability for all flood damage and that to the extent that policy covered flood damage, it was limited by [ 2ithe ACC clause to damage caused exclusively by flood and not in conjunction with any other peril. The district court agreed, and the Fifth Circuit reversed, finding that such an interpretation would lead to an absurd result. The appellate court concluded that the policy did not preclude the plaintiffs recovery for damage caused by a combination of wind and flood, where both causes where determined to be included *799 perils under the policy. Id. at 127. Although both causes of the mold were covered losses in Stewart, the same consideration apply where only one cause is a covered loss.
That was the case in Corban v. United Services Auto. Ass’n, 20 So.3d 601 (Miss.2009). In Corban, the Mississippi Supreme Court reviewed a similar ACC clause and determined that it was inapplicable based on ambiguity in the words “concurrent” and “in any sequence.” Id., 20 So.3d at 614-15. The court therefore found that once a covered peril occurs, coverage cannot then be taken away based on subsequent occurrences. The ACC clause was nearly identical to the language in Stewart Enterprises, supra, and the terms “loss,” “concurrently,” and “in any sequence” were not defined. Id., 20 So.3d at 612-13. The court ultimately determined that for purposes of the ACC clause, it was only when two perils converged at the same point in time, contemporaneously and operating in conjunction, that there would be a “concurrent” cause or event, which would trigger the clause. Id., 20 So.3d at 615. In its reasoning, the Corban court stated:
“[n]o reasonable person can seriously dispute that if a loss occurs, caused by either a covered peril (wind) or an excluded peril (water), that particular loss is not changed by any subsequent cause or event. Nor can the loss be excluded after it has been suffered, as the right to be indemnified for a loss caused by a covered peril attaches at that point in time when the insured suffers deprivation of, physical damage to, or destruction of the property insured. An insurer cannot avoid its | ^obligation to indemnify the insured based upon an event which occurs subsequent to the covered loss.”
Id., 20 So.3d at 613. Thus, the court concluded that the “in any sequence” language in the policy could not be used to divest the insured of their right to be indemnified for covered losses.
OPSB lastly cites to Maxus Realty Trust, Inc. v. RSUI Indemnity Co., No. 06-0750, 2008 WL 2098084 (W.D.Mo. May 16, 2008) (applying Mississippi law). In Maxus, the defendant insurer, RSUI, attempted to limit the damages under its ACC clause by claiming that any damages caused exclusively, concurrently, or in any sequence to the loss by flood were excluded from coverage under the RSUI policy. The insurer specifically argued that all damage below the four-foot water line caused by Hurricane Katrina storm surge was not covered, even if that portion of the structure had been damaged by prior ■winds. In determining whether the ACC clause applied in that particular case, the Maxus court held that the clause did not remove from coverage separate damage caused by a covered peril, and denied the insurer’s summary judgment motion.
Westchester cites to a number of federal decisions from the Eastern District of Louisiana in support of its argument that the ACC clauses contained in the Lexington, Clarendon, RSUI, and Westchester policies broadly exclude coverage for damage related to mold. Unlike the cases cited by OPSB, the cases cited by West-chester address ACC clauses in the context of policy language excluding coverage for damages caused by mold.
In the first case Westchester cites, Deutsch v. State Farm Fire & Casualty Co., 06-8450, 2009 WL 2599234 (E.D.La. Aug. 21, 2009), the plaintiffs’ home l^was damaged by winds during Hurricane Katrina when a 70-foot tree fell, causing significant damage to the roof, and as a result, rain entered a third floor bedroom and stairway, and then spread laterally *800 and downward through walls and cavities damaging and causing mold to develop on virtually everything in its path. The home sustained additional damage as a result of wind-blown windows and doors. At issue before the court on summary judgment was the following exclusionary language:[15]
We do not insure under any coverage for any loss which would not have occurred in the absence of one or more of the following excluded events. We do not insure for such loss regardless of: (a) the cause of the excluded event; or (b) other causes of the loss; or (c) whether other causes acted concurrently or in any sequence with the excluded event to produce the loss; or (d) whether the event occurs suddenly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these:
[[Image here]]
g. Fungus. We also do not cover:
(1) any loss of use or delay in rebuilding, repairing or replacing covered property, included any associated cost or expense, due to interference at the residence premises or location of the rebuilding, repair or replacement, by fungus;
(2) any remediation of fungus, including the cost to:
(a) remove the fungus from covered property or to repair, restore or replace that property; or
(b) to tear out and replace any part of the building or other property as needed to gain access to the fungus; or
(3) the cost of any testing or monitoring of air or property to confirm the type, absence, presence or level of fungus, whether performed prior to, during or after removal, repair, restoration or replacement of covered property.
\<uId. at *3 (Emphasis in original). The policy defined fungus as “any type or form of fungus, including mold, mildew, myco-toxins, spores, scents or byproducts produced or released by fungi.” Id.
State Farm argued that its policy unambiguously excluded coverage for mold damage, testing, or remediation, regardless of the cause of the mold. Id. at p. *1. It was not, however, “seeking to avoid its obligation with respect to an otherwise covered loss simply because mold-related damage occur[ed] in the same area that was damaged by a covered loss.” Id. Rather, the insurer contended that there was “no additional coverage for mold-related damage regardless of what caused the mold.” Id. (Emphasis added). State Farm also “conceded] that otherwise covered damage [did] not cease to be covered simply by virtue of the presence of mold.” Id. at *3.
Based on the breadth of the language in the policy’s mold endorsement, the district court rejected the plaintiffs’ attempts to distinguish between coverage for mold resulting from a covered loss and damage caused by mold. In granting summary judgment, the court concluded:
Mold as an element of water damage is a physical loss to the property involved even where the underlying water damage is not so severe as to require replacement of the damaged area. The mold endorsement specifically states that a loss attributable to mold is not covered regardless of its cause or other causes at play. Thus, even where mold results from a covered cause of loss the *801 endorsement unambiguously excludes coverage.
Id. The court further pointed out that “even where mold is simply an element of damage that results from a covered cause of loss, the costs of testing, investigating, treating, containing, decontaminating, removing, and disposing of mold are not | ^covered.” Id. at *4. It distinguished cases such as Simonetti, that were cited by the plaintiff, on the grounds that the language in those policies allowed for contrary interpretations. Id.
What distinguishes the Deutseh case from the case before us is that the insurer was not attempting to avoid its obligation to compensate the insured for damages due to a covered loss which were incurred prior to the onset of mold. Additionally, the language of the exclusion more specifically identified the type of consequential damages that might be attributed to the presence of mold.
These distinctions were also brought to the forefront in Carpenter v. State Farm Ins. Co., 06-8456, 2009 WL 4160809 (E.D.La. Nov. 28, 2009) (unpublished), another case cited by Westchester which contained a mold exclusion identical to the one in Deutseh, supra. Relying on Deutseh, State Farm, filed a motion for summary judgment asking the court for “an Order providing that even where mold results from a covered loss, the endorsement unambiguously excludes coverage.”[16] Id. at *3. State Farm also conceded that the amount of the plaintiffs damages that were excluded by the policy would be determined by a jury at trial. Id. Noting that the defendant was, in effect, asking the court for a jury instruction (which was premature), the district court denied summary judgment on the basis that the insurer would still have the burden of proving “that any damage they seek to exclude would not have occurred in the absence of mold.” Id. at *3. Because the exclusion “preclude[d] only that damage that would not have occurred in the absence of mold,” there still “remain[ed] numerous issues of material fact regarding the cause of the mold.” Citing Deutseh, for the conclusion 12f,that State Farm’s exclusionary language was “very broad in its application,” the court stated:
If the Defendant is able to prove that any of Plaintiffs’ damages would not have occurred absent the mold, [then] those damages are excluded under the policy even if they were caused by wind driven rain or some other covered loss.
Id. at *3, fn. 2 (citing Deutsch, 2009 WL 2599234, at *4). The court further noted that it would instead deal with the mold exclusion by virtue of an appropriate jury instruction. Id. at *3. See also, Sammons v. State Farm Fire & Cas. Co., 05-0028, 2006 WL 1547102, at *4 (S.D.Ind. June 2, 2006) (wherein the court interpreted language similar to the language in Deutseh, supra, and Carpenter, supra, to deny coverage for mold.)
Westchester also cites Ace American Ins. Co. v. Administrators of Tulane Educational Fund, 07-3749, 2008 WL 4091013 (E.D.La. Aug. 29, 2008) (unpublished), as authority for its position. There, the district court found that the policy clearly excluded coverage for damage caused by mold, even if the mold was caused by a windstorm — a covered event. The exclusion at issue in Ace American stated:
This policy does not insure any loss, damage, or expense consisting of, caused by, contributed to, or aggravated by mold, moss, mildew, fungi, spores, bacterial infestation or any similar organism, wet or dry rot and extremes of *802 temperature or humidity, whether directly or indirectly the result of a covered peril. This includes, but is not limited to, the cost for investigation, testing, remediation services, extra expenses or business interruption. Such loss is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.
Id. at ⅜1 (Emphasis added). It is not clear from the opinion whether the insurer was seeking to exclude damages otherwise covered under the policy prior to theJjjonset of mold. Nevertheless, as discussed, we observe that the inclusion of the phrase, “consisting of’ has broader implications than the terminology used in the policies before us, and is therefore clearly distinguishable. In addition, in Ace American, the exclusion contained specific examples of the type of mold-related damages it sought to exclude, such as investigation, testing, remediation, extra expenses and business interruption. Damages of this sort could be deemed separately attributable to mold, rather than a covered peril like a windstorm.
That was the situation in Builders Mutual Ins. Co. v. Glascarr Prop. Inc., 202 N.C.App. 323, 688 S.E.2d 508, 511 (2010), where, at issue on appeal was whether or not mold remediation costs to vandalized property were covered under a policy. The policy provided:
A. Coverage. We will pay for direct physical “loss” ... from any Covered Cause of Loss[.]
[[Image here]]
3. Covered Cause of Loss means risks of direct physical loss ... except those causes of loss listed in the Exclusions.
B. Exclusions. 1. We will not pay for a “loss” caused directly or indirectly by any of the following. Such “loss” is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the “loss”.
[[Image here]]
The presence, growth, proliferation, spread or any activity of “Fungi”, wet or dry rot or “microbes.”
The insured “argue[d] that, because the policy covers claims arising from vandalism, it also cover[ed] losses caused by mold, provided the mold itself was caused by” vandalism. The court disagreed, finding that the insured’s argument was directly contrary to the unambiguous mold exclusion, which excluded “a loss | .^caused directly or indirectly by [mold] ... regardless of any other cause or event that contributes concurrently or in any sequence to the loss.” The court therefore found that “the policy clearly exclude[d] payment of a claim for the cost of mold remediation.” Id. at 511. See also, De Vore v. Am. Family Mut. Ins. Co., 383 Ill.App.3d 266, 322 Ill.Dec. 490, 891 N.E.2d 505, 508 (2008) (wherein court held that coverage for mold remediation was excluded where policy unambiguously excluded loss “resulting directly or indirectly from or caused by” mold, “regardless of any other cause or event contributing concurrently or in any sequence to the loss”).[17]
*803 We find that as a whole, the cases cited by Westchester do not interpret the exclusionary language, including the ACC clauses contained therein, as broadly as Westchester would like us to interpret the language in this case. In some of the cases cited, it is clear that those insurers were not asking the court to excluded coverage for damages incurred prior to the onset of mold by an otherwise covered peril. In other cases, the parties specifically delineate the exact type of damage the insurer is claiming should be excluded.
Accordingly, we find that the ACC clauses do not operate to remove from coverage, damages that would have otherwise been covered as a result of the | ^initially covered loss. In that respect, we agree with the Corban court that it cannot be seriously disputed that if a covered peril causes damages, coverage for that damage “is not changed by any subsequent cause or event.” Corban, supra, 20 So.3d at 613. As the Corban court succinctly stated, “Nor can the loss be excluded after it has been suffered, as the right to be indemnified for a loss caused by a covered peril attaches at that point in time when the insured suffers deprivation of, physical damage to, or destruction of the property insured.” Id. We agree with that court’s conclusion that ACC language such as “the loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss” cannot be used to divest an insured of their right to be indemnified for covered losses.
We further acknowledge that even if the extent of coverage for OPSB’s loss can be viewed in two separate ways, basic principles of insurance law require us to interpret the language broadly in favor of coverage and to construe exclusions and limitations narrowly. Peterson, 98-1712 at p. 5, 729 So.2d at 1029.
The practical implication of our reading of the provisions is that a factual determination must be made regarding whether the damages ultimately suffered by an insured are attributed to an initially covered loss, or whether the damages are more properly attributed to the presence of mold. Thus summary judgment is inappropriate at this stage of litigation.

Public Policy Concerns

OPSB additionally argues that public policy supports a finding that coverage should exist for mold resulting from a covered loss. To substantiate their public policy argument, OPSB refers to Advisory Letter No. 01-02 and Addendum to the | S()Advisory Letter issued by the Louisiana Department of Insurance.[18] Advisory Letter No. 01-02 and the Addendum support *804 this Court’s conclusion as to the scope of the policies at issue in this case.
Advisory Letter No. 01-02 states:
Insurers should make every effort to develop exclusions that are narrowly drafted. Further, such exclusions should not be used to deny coverage for the costs of repair and restoration of the insured premises for damages arising from a covered cause of loss, even if some mold is present.
The Addendum further states:
Property policies cover damage caused by water if the underlying cause is a covered cause of loss. For example, during a storm a tree branch falls and causes damage to the roof, allowing water into the insured property; or a waterpipe cracks or bursts and water escapes and causes property damage including ruined sheetrock and carpet. Under the policy, the insurer is obligated to replace and/or repair the damaged property. If mold appears on the wet sheetrock or carpet, the insurer is not relieved of its obligation to make the covered repairs, including, taking the usual and customary steps of treating the damaged area with bleach and thoroughly drying it out. However, in the absence of a specific remediation coverage provision, an insurer does not have a separate obligation to remediate any damage arising directly from mold. The presence of mold does not convert a covered claim arising from a covered cause of loss to a non-covered claim. On the other hand, the presence of mold does not create new and distinct obligations to remediate, decontaminate or otherwise remove the mold unrelated to the repair or replacement of the water-damaged property.
According to OPSB, because of the Commissioner’s role in the regulation of Louisiana Insurance Law, his opinion regarding matters of insurance coverage is persuasive. We agree that the Commissioner’s stance warrants consideration, while at the same time recognizing that it is ultimately not binding on this Court. Doerr v. Mobil Oil Corp., 00-0947, p. 24 (La.12/19/00), 774 So.2d 119, 132-34 opinion corrected on reh’g, 00-0947 (La.3/16/01), 782 So.2d 573 (“We believe that a full discussion of the issue in this case would be wanting without discussing the position of the Louisiana Commissioner of Insurance on this issue,” while at the same time recognizing that resolving disputes over insurance coverage is the duty of the courts).
We find that the information contained in the Advisory Letter coincides with our interpretation of the exclusions in this case. As advised by the Commissioner, we find that “[t]he presence of mold does not convert a covered claim arising from a covered cause of loss to a non-covered claim” and that “exclusions should not be used to deny coverage for the costs of repair and restoration of the insured premises for damages arising from a covered cause of loss, even if some mold is present.”[19] We further find that under the policy language in this case, “the presence of mold does not create new and distinct obligations to remediate, decontaminate or otherwise remove the mold unrelated to the repair or replacement of the water-damaged property.”[20]
DECREE
Based on the showing before us, we conclude that the extent of coverage in this case cannot be resolved by summary judgment and should properly be resolved at a trial on the matter. Because the specific *805 elements of damage that the insurers seek to exclude have not been delineated, issues of material fact exist regarding which damages can be said to have been caused by mold, and which damages can be considered otherwise-covered losses. Causation is a factual issue to be determined by the fact finder. Cay v. State, DOTD, 93-0887 (La.1/14/94), 681 So.2d 393.
For the reasons expressed herein, we find that the trial court erred in its plain language analysis, interpretation, and conclusion that under the policy, “there is no coverage for damages due to mold, regardless of the potential source or initial contributing factor.” Additionally we find (1) material issues of fact exist regarding which damages can be said to have been caused by mold, and which damages can be considered otherwise-covered losses; (2) the only damage that would be excluded from coverage are consequential damages that occurred as a direct result of the presence of the mold; and (3) the ACC clause cannot operate to exclude coverage for damages initially attributable to a covered loss. The judgment of the trial court granting summary judgment to Westches-ter, Clarendon, and Essex is reversed and this matter is remanded for further proceedings consistent with this opinion.
REVERSED AND REMANDED
MeKAY, C.J., concurs.
LOB RANO, J., Concurs in the result.

. Collectively referred to as "Insurers.”

. See, Orleans Parish School Board v. Lexington Ins. Co., et al, C.A. No. 06-6328 (E.D.La. May 29, 2007).

. Hereinafter, collectively referred to as "mold.”

. Unless there is an express exception to the form of the underlying policy, the excess insurer under a "following-form" policy is governed by the underlying policy's terms and conditions. Toston v. Nat’l Union Fire Ins. Co. of La., 41,567, p. 5 (La.App. 2 Cir. 11/3/06), 942 So.2d 1204, 1207; Rivers v. Heroman, 95-1568, p. 2 (La.App. 4 Cir. 2/5/97), 688 So.2d 1293, 1294.

.The trial court concluded that "RSUI’s liability for mold/fungus damages is triggered when the total covered loss or damage reaches its attachment of $100,000,000.00. Even then, there are some limitations. First, the mold must result from a covered cause of loss; and second, there is a limited give back of coverage in the amount of $15,000.”

. In February of 2012, the trial court dismissed all of OPSB's claims against Clarendon and Essex pursuant to Joint Motion to Approve Settlement and to Dismiss with prejudice. OPSB nevertheless appeals summary judgment as to Clarendon, Essex, and West-Chester, on the grounds that the coverage determination may affect the availability of coverage by Westchester and RSUI. In addition, although it is not an actual party to the appeal, RSUI has sided with Westchester in opposing OPSB’s appeal.

. See, Lexington policy number 2502294, Endorsement 1.

. Essex policy number 3349.

. Endorsement No. 4 of the Clarendon policy, No. PCA 14161.

.See, Westchester policy D35888081 003.

. In brief to this Court, OPSB gave the example of a book initially damaged by wind-driven rain. It argued that if an insurer would have been responsible for damage to the book before mold subsequently damaged the book, the existence of mold should not preclude payment by the insurer. In its post-argument brief to this Court, Westchester responded to OPSB's textbook hypothetical, acknowledging that "if the claimed coverage is limited to situations where covered damage is incurred before mold develops and the mold does not aggravate the damage, but merely occurs on property that is already a total loss, Westchester and RSUI would agree” with that position (Emphasis added).

. See e.g., Siegel v. Chubb Corp., 33 A.D.3d 565, 566, 825 N.Y.S.2d 441 (2006) (wherein the court determined that mold itself was the efficient proximate cause of the insured's loss and therefore excluded by the policy language which barred recovery for "any loss caused by ... mold”).

. The Liristis court did not reach the issue of whether or not the ACC clause contained in the mold exclusion would apply to deny coverage.

. Coverage for medical issues is not an issue in this case.

. The insurance policy at issue contained a "Fungus (including mold) Exclusion Endorsement” which supplemented the "Losses not Insured” section of the policy.

. Internal quotation omitted.

. Westchester also relies on Adams v. Lexington Insurance Co., 06-11388, 2009 WL 362446 (E.D.La. Feb. 11, 2009) (unpublished) (Although the court recognized a limited giveback of coverage for mold, and held that the “mold exclusion ... allows for no coverage,” the opinion did not cite to the specific policy language or give further reasons for ruling other than to mention the plaintiff argued against himself and confused the issues); Morgan v. Auto Club Family Ins. Co., 04-1562 (La.App. 3 Cir. 4/06/05), 899 So.2d 135 (Court found no coverage where policy contained exclusions for both mold and faulty workmanship, and the court found that mold damage in attic resulted from accumulation of condensation which was not a covered peril); Carrizales v. State Farm Lloyds, 518 F.3d 343 *803 (5th Cir.2008) (Interaction between mold exclusion provision, excluding coverage for "loss caused by ... mold,” to dwelling and personal property, and exclusion repeal provision, covering "loss caused by ... water damage ... if loss would be otherwise covered under this policy” to personal property, created no ambiguity; therefore mold damage to the dwelling caused by plumbing leak was excluded); and Predeteanu v. Auto-Owners Ins. Co., 267718, 2006 WL 2613555, at *2 (Mich.Ct.App. Sept. 12, 2006) (unpublished) (Court found summary disposition regarding coverage for mold damages was proper where the policy excluded coverage for mold regardless of whether or not there was another contributing cause; however, the Court also found that the trial court erred in dismissing the insured's claim where the plaintiff alleged water damage but the insurer determined that the loss was not included based on the terms of the policy and where the complaint did not describe the losses at issue in specific detail.)

. See, Louisiana Department of Insurance Advisory Letter No. 01-02 (December 28, 2001), and Addendum to Advisory Letter Number 01-02 (September 16, 2005).

. Advisory Letter No. 01-02, and Addendum to Advisory Letter Number 01-02.

. Addendum to Advisory Letter Number 01-02.