211 N.J. Super. 246 (1986)
511 A.2d 717
MICHAEL STONE AND LINDA STONE, PLAINTIFFS-APPELLANTS,
v.
ROYAL INSURANCE COMPANY, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued May 28, 1986.
Decided June 23, 1986.
*247 Before Judges SHEBELL and MUIR.
Michael John Stone argued the cause for appellants (Hoagland, Longo, Oropollo & Moran, attorneys; Donald G. Sweetman, on the brief).
Robert J. Reilly, III, argued the cause for respondent (Haggerty & Donohue, attorneys; Robert J. Reilly, III, on the brief).
The opinion of the court was delivered by SHEBELL, J.A.D.
Plaintiffs appeal the entry of summary judgment in favor of defendant, Royal Insurance Company, following the Law Division's consideration of cross-motions for summary judgment. Plaintiffs' basement and its contents sustained water damage as a result of a rupture in a hose which connected their sump pump to a drain. Their homeowner's policy with defendant covered loss due to "[a]ccidental discharge or overflow of water or steam from within a plumbing, heating or air conditioning system or from within a household appliance." Defendant disclaimed liability under a clause which excluded "loss resulting directly or indirectly from... [w]ater damage, meaning ... water below the surface of the ground ..." We reverse and remand.
The basic facts are not disputed. On May 30, 1984 the basement in plaintiffs' home filled with water when a hose ruptured. The hose connected a sump pump to a drain in the basement. The sump pump was portable and was located in a sump pit in the basement. The pump was powered by plugging *248 its electrical cord into a standard wall outlet. Plaintiff Michael Stone, an attorney, gave the lay opinion that the only water in the basement came from the hose and that there was no water seepage. He concedes that the purpose of the sump pump was to remove subsurface water, i.e., when the water table reaches the level of the sump pit it is expelled.
The homeowner's policy in question covered "direct loss ... caused by:
* * * * * * * *
14. Accidental discharge or overflow of water or steam from within a plumbing, heating or air conditioning system or from within a household appliance.
The relevant exclusion clause stated: "We do not cover loss directly or indirectly from:
* * * * * * * *
3. Water Damage, meaning:
a. flood, surface water, waves, tidal water, overflow of a body of water, or spray from any of these, whether or not driven by wind;
b. water which backs up through sewers or drains; or
c. water below the surface of the ground, including water which exerts pressure on or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure.
Direct loss by fire, explosion or theft resulting from water damage is covered.
In his oral opinion the judge noted that there might be an issue as to whether the sump pump and attached hose constituted a household appliance as opposed to a fixture, but he found it unnecessary to reach that question since in his view an exclusion in the policy made it clear the loss was not covered.
In interpreting insurance contracts the basic rule is to determine the intention of the parties from the language of the policy, giving effect to all of its parts so as to accord a reasonable meaning to its terms. Caruso v. John Hancock &c., Insurance Co., 136 N.J.L. 597, 598 (E. & A. 1947); Tooker v. Hartford Acc. & Indem. Co., 128 N.J. Super. 217, 222-223 (App.Div. 1974). When the terms of a policy are clear and unambiguous the court must enforce the contract as it finds it; the court cannot make a better contract for the parties than *249 they themselves made. Flynn v. Hartford Fire Insurance Co., 146 N.J. Super. 484, 488 (App.Div. 1977), certif. den. 75 N.J. 5 (1977); Am. Leg. Hosp. v. St. Paul's Fire Ins. Co., 106 N.J. Super. 393, 397 (App.Div. 1969). Rules of construction favoring the insured cannot be employed to disregard the clear intent of the policy language. Weedo v. Stone-E-Brick, Inc., 81 N.J. 233, 246-247 (1979).
However, where an ambiguity exists, it must be resolved against the insurer. DiOrio v. New Jersey Manufacturers Insurance Company, 79 N.J. 257, 269 (1979); Bryan Const. Co., Inc. v. Employers' Surplus Lines Ins. Co., 60 N.J. 375, 377 (1972). If the controlling language will support two meanings, one favorable to the insurer and the other to the insured, the interpretation favoring coverage should be applied. Corcoran v. Hartford Fire Ins. Co., 132 N.J. Super. 234, 243 (App.Div. 1975). "Accordingly, such contracts are to be interpreted in a manner that recognizes the reasonable expectation of the insured." Zuckerman v. Nat. Union Fire Ins., 100 N.J. 304, 320-321 (1985). Coverage clauses should be interpreted liberally, whereas those of exclusion should be strictly construed. Butler v. Bonner & Barnewall, Inc., 56 N.J. 567, 576 (1970); Ellmex Const. Co., Inc. v. Republic Ins. Co., 202 N.J. Super. 195, 205 (App.Div. 1985). Even if a particular phrase or term is capable of being interpreted in the manner sought by the insurer, "where another interpretation favorable to the insured reasonably can be made that construction must be applied." 202 N.J. Super. at 204.
We reject defendant's contention that the sump pump with its attached hose was a fixture, and therefore not a household appliance or part of the plumbing system. Plaintiff Michael Stone's second affidavit attests to the portability of the sump pump, and photographs appear to support his claim that we are not dealing with a fixture. In any event, "appliance" and "fixture" are not mutually exclusive terms. An appliance is a tool, instrument or device adapted for a particular use, and *250 can be a fixture. Webster's Third New International Dictionary (Unabridged) 104-105 (1976). We conclude that to the average insured a portable sump pump of the type involved here is no less an appliance than a dehumidifier or a washing machine.
Defendant promised to insure plaintiffs against direct loss caused by an accidental discharge or overflow of water from part of the plumbing system or from a household appliance, which is what occurred here. The policy, however, excludes losses caused directly or indirectly by subsurface water, which was what the sump pump was pumping out. Defendant argues that if included and excluded risks concurrently cause a loss the insured cannot recover.
The rule urged by defendant was adopted by this court in Brindley v. Fireman's Ins. Co. of Newark, 35 N.J. Super. 1 (App.Div. 1955), which involved a homeowner's policy that insured against loss by windstorm but excluded loss caused directly or indirectly by waves or high water. Plaintiffs' shore house suffered damage during a storm which occurred while they were away. In most instances it was not possible to separate the damage caused by wind from that caused by water with any degree of certainty. In those circumstances, this court stated: "Loss due to the effect of causes both within and outside the coverage, operating conjointly, is generally considered not recoverable under this kind of provision." Id. at 6. The insured's "proofs must be such as to enable the factfinder to find without resort to sheer conjecture the amount of the particular loss ascribable to the hazard assumed by the carrier." Ibid. In Newman v. Great American Ins. Co., 86 N.J. Super. 391, 403 (App.Div. 1965) this court adhered to the rule set forth in Brindley, rejecting an insured's contention that Brindley was contrary to sound policy.
Plaintiffs argue that this rule does not apply here because the two causes of the loss, the existence of the underground water and the broken sump pump occurred sequentially *251 not concurrently. They contend that the rule set forth in Franklin Packaging Co. v. California Union Ins. Co., 171 N.J. Super. 188 (App.Div. 1979), certif. den. 84 N.J. 434 (1980), is dispositive. We agree.
In Franklin Packaging the policy covered vandalism but excluded "loss caused by, resulting from, contributed to or aggravated by" water which backed up through a drain. The insured's stock in trade suffered water damage when vandals broke a valve on an air conditioning unit, which created a constant flow of water. Normally that water would have drained harmlessly out through a six-inch drain, but at the time the drain pipe was blocked by a burlap bag left behind by plumbers. The insurer argued the loss was excluded, relying on Brindley, supra, and Newman, supra. This court found coverage, stating:
The general rule applicable to a factual context which presents a facial conflict between the risk covered and an exclusion is found in 5 Appleman, Insurance Law and Practice § 3083 at 309-311 (1970):
"Where a peril specifically insured against sets other causes in motion which, in an unbroken sequence and connection between the act and final loss, produced the result for which recovery is sought, the insured peril is regarded as the proximate cause of the entire loss. It is not necessarily the last act in a chain of events which is, therefore, regarded as the proximate cause, but the efficient or predominant cause which sets into motion the chain of events producing the loss. An incidental peril outside the policy, contributing to the risk insured against, will not defeat recovery * * *. In other words, it has been held that recovery may be allowed where the insured risk was the last step in the chain of causation set in motion by an uninsured peril, or where the insured risk itself set into operation a chain of causation in which the last step may have been an excepted risk. ([Emphasis omitted])"
The cases relied on by defendant in support of its contention that Appleman's general rule is not authority in New Jersey are inapposite and not within the purview of the rule. In both Newman v. Great American Ins. Co., 86 N.J. Super. 391 (App.Div. 1965), and Brindley v. Firemen's Ins. Co. of Newark, 35 N.J. Super. 1 (App.Div. 1955), plaintiffs had extended coverage for "direct loss by windstorm" under policies which excluded wave and high water damage "whether driven by wind or not." In both, wind and high water occurred simultaneously, and plaintiffs were required to show that damage incurred was caused by wind.

*252 Here we are dealing with sequential and not simultaneous events, the first being the insured against risk of vandalism, the last a backup due to the blockage of the drain. The sequence fits precisely within the general rule stated in Appleman. [171 N.J. Super. at 191]
Here, the underground water, an excluded peril, started the loss-producing chain of causation, but the last event, the ruptured hose on the appliance, was a covered risk. In World Fire & Marine Ins. Co. v. Carolina Mills Dist. Co., 169 F.2d 826 (8th Cir.1948) the policy insured against loss caused by an accidental discharge or overflow of water from the plumbing system, but excluded losses caused by sewer backups. A heavy rain forced a sewer backup but the water would not have gotten into plaintiffs' basement, damaging plaintiffs' merchandise, unless the pressure from the backup broke a metal cap in the premises' plumbing system. The Court found coverage even though, as in the present case, the exclusion clause purportedly disclaimed liability for losses caused "directly or indirectly." See 169 F.2d at 828-831. Accord King v. Travelers Insurance Co., 84 N.M. 550, 505 P.2d 1226 (1973).
We find Al Berman, Inc. v. Aetna Casualty & Surety Co., 216 F.2d 626 (3d Cir.1954), relied on by defendant and the trial court, to be distinguishable because the loss there was not within the coverage portion of the policy. Further, we do not find Berman to be persuasive.
We reverse the entry of summary judgment in favor of defendant and remand to the trial court for a determination of the extent of plaintiffs' damages caused as a direct result of the ruptured hose as distinguished from any damage caused by water seepage alone.
Regarding plaintiffs' claim for interest and attorneys' fees, we call the trial court's attention to Ellmex Const. Co., Inc. v. Republic Ins. Co., supra, 202 N.J. Super. at 208-214.
Reversed and remanded.