859 A.2d 694 (2004)
372 N.J. Super. 421
Joseph T. and Susan M. SIMONETTI and Nicholas J. and Natalie M. Simonetti, minors, by and through their natural parents, Joseph T. and Susan M. Simonetti, Plaintiffs/Appellants,
v.
SELECTIVE INSURANCE CO. a/k/a Selective Way Insurance Company a/k/a Selective Insurance Company Of America, Defendants/Respondents, and
J.S. Hovnanian & Sons, Inc. and Hovbros Corp., Defendants, and
Capital Roofing and Siding, Sullivan and Associates, James R. Slim Plastering, Harry Lee, Inc. and Ten Gir, Third-Party Defendants.
Superior Court of New Jersey, Appellate Division.
Submitted September 21, 2004.
Decided October 15, 2004.
*695 Eugene Mattioni, Philadelphia, PA, for appellants.
William J., Schmidt, for respondents (Alan J. Charkey, on the brief).
Before Judges SKILLMAN, COLLESTER and PARRILLO.
The opinion of the court was delivered by
PARRILLO, J.A.D.
We granted leave to appeal the entry of summary judgment in favor of defendant Selective Insurance Co. (Selective). The trial court found there was no coverage under plaintiffs' homeowner's insurance policy for the mold contamination and other damages to their home allegedly caused by water from a torrential rainstorm. Their all-risks homeowner's policy with defendant covered physical loss to property. Defendant, however, disclaimed liability under clauses excluding "loss caused by... mold" and damage resulting from "faulty ... design ... workmanship ... [and] maintenance." We find a question of fact regarding causation, and ultimately coverage, and therefore, reverse and remand.
We view the facts and all reasonable inferences therefrom in the light most favorable to the party against whom summary judgment was entered. Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540, 666 A.2d 146, 156 (1995). Plaintiffs, Joseph and Susan Simonetti, are the owners and residents of a home insured by Selective continually since 1998, having purchased the newly constructed residence on March 27, 1995. Within a year or two of moving into the house, plaintiffs noticed leaks in one of the windows in the first floor den and notified the builder Hovnanian who then caulked the window. Thereafter, plaintiffs intermittently discovered further leaking from the same window, *696 usually after substantial rainfalls, and as late as March, 2001, but when the problem was reported, Hovnanian told plaintiffs it was their responsibility to caulk the windows because this was just normal wear and tear.
On June 16, 2001, there was a severe rainstorm, and a very substantial water leak caused damage throughout plaintiffs' home, including the den, the room where the previous leaks had taken place, the upstairs bedroom, and the back of the house where wind had blown off siding. Plaintiffs reported the damage to Selective on June 19, 2001, and defendant's representative visited the home a few days later to examine the damage. At that time, however, plaintiffs did not inform the representative of any prior damage attributable to leaking water.
Plaintiffs discovered mold growth in their home on August 28, 2001, about two months after the June rainstorm, and immediately notified Selective. Defendant responded on August 30, 2001, by sending plaintiffs a reservation of rights that cited certain provisions from Selective's homeowner's policy excluding coverage for mold. Plaintiffs' file was then sent to defendant's environmental claims unit where it was initially determined that the homeowner's policy covered mold and its remediation.
In late September, 2001, plaintiffs' claim was transferred to another Selective representative, Louis Crisci, a property specialist with expertise in mold, who visited the house in October. According to a letter sent by plaintiffs' attorney to Mr. Crisci, while at the house, Mr. Crisci informed the plaintiffs that they would be covered for a period of up to six months up to $2,400.00 per month in rental expenses and an additional $600.00 per month as a furniture allowance.
On October 30, 2001, Mr. Crisci obtained documents from Royal Specialty Underwriting, Inc. (Royal), Hovnanian's insurer, including a report dated September 19, 2001, by Harvey A. Kagan, Sc.D., P.E., of International Environmental Services, Inc., issued to Royal. The report indicated that the water damage to plaintiffs' house appeared to have occurred from the time in 1997 that the plaintiffs first noticed the leakage in the den. According to Kagan, water leakage was due to a combination of design defects and waterproofing workmanship defects. These defects included, among other things, numerous rooflines creating complex intersections, an insufficiently short gutter along the bedroom roof, and the failure to install a cricket or diverter upslope from the nursery wall. In fact, an October 1, 2001 report by plaintiffs' expert engineer, Al Vasys, also determined that the water intrusion was a direct result of poor workmanship during the original construction of the house. According to Vasys, the method of stucco and flashing application resulted in gaping holes in the wall permitting water entry into the wall cavity.
The homeowner's policy in question covered "direct loss to property described in Coverage A and B only if that loss is a physical loss to property." The relevant exclusion clause stated: "We do not insure, however, for loss:
2. Caused by:
...
e. Any of the following:
Wear and tear, marring, deterioration; Inherent vice, latent defect, mechanical breakdown; Smog, rust or other corrosion, mold, wet or dry rot ... []"
Another exemption, found in Section 1, "Exclusions," provides:

*697 2. We do not insure for loss to property described in Coverages A and B caused by any of the following. However, any ensuring [sic] loss to property described in Coverage A and B not excluded or excepted in this policy is covered.
...
c. Faulty, inadequate or defective:
(1) Planning, zoning, development, surveying, siting;
(2) Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;
(3) Materials used in repair, construction, renovation or remodeling;
(4) Maintenance;
of part or all of any property whether on of [sic] off the "residence premises."
Based on the information then available, on November 7, 2001, defendant issued a denial of coverage to the plaintiffs on the grounds that the damage to the house resulted from wear and tear, deterioration, latent defect, inherent vice, corrosion, mold, wet or dry rot, setting including resultant cracking of walls; neglect, faulty, inadequate or defective specifications, workmanship, construction, repair, materials used in repair, construction or maintenance.
Thereafter, plaintiffs filed a complaint against defendant alleging breach of contract, bad faith and violation of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 to -56:8-2.27.[1] Selective moved for summary judgment on the issue of coverage. The trial court concluded that there was no coverage and granted summary judgment in favor of defendant. In his oral opinion, the judge reasoned:
But I think there's a generic proximate cause consideration that I have to make in any event.
But given the present state of the facts, I find no fault in this, but nobody posits that this stormall experts only focused on the failure of Hovnanian to deliver a house free of defects.
The fact that this house leaked with normal storms, presumably normal storms, it just leaked more with this storm. So, I think it'sto me, it's it'sthe predominant cause is the faulty construction.
If this was a situation where there was no history of leaking, I think the plaintiff has a better chance of proving that the storm, itself, was a predominant cause.
But here, the only thing that the big storm did was cause more damage because prior storms, presumably, by everybody's articulation, lesser storms, still caused the problems.
So that, to me, the predominant cause in this was the faulty construction. And as such, there's an exclusion for that.
We apply a de novo standard of review when evaluating whether summary judgment was proper. Brill, supra, 142 N.J. at 540, 666 A.2d at 156. As does the motion judge, we first decide if there is a genuine issue of material fact, and if none, whether the moving party is entitled to judgment as a matter of law. Ibid.; see also Prudential Prop. Cas. Ins. Co. v. Boylan, 307 N.J.Super. 162, 167, 704 A.2d 597, 599-600 (App.Div.1998); R. 4:46-2(c).
*698 Plaintiffs argue that the mold and other damage is a direct physical loss to the home caused by water intrusion from the rainstorm, a covered loss. Contrary to defendant's contention that "mold" is excluded based on the plain language of the policy, plaintiffs maintain that mold damage is covered in contrast to damage caused by mold. In other words, the mold itself is a covered loss, for which plaintiffs claim recovery for repair and remediation, rather than a cause of loss otherwise exempted from coverage. Both as to the mold as well as other damages, plaintiffs also claim that the water intrusion occasioned by the June 16, 2001 rainstorm was a "distinct occurrence" and the proximate cause of their loss. Defendant counters that plaintiffs' loss resulted from one or more excluded causes  i.e. faulty design, workmanship and maintenance  which, even if acting jointly with a covered peril, were the predominant cause, defeating coverage.
We start our analysis by reference to well-settled principles of insurance law. As a threshold matter, the interpretation of an insurance contract is a question of law which we decide independent of the trial court's conclusions. On this score, when interpreting an insurance contract, the basic rule is to determine the intention of the parties from the language of the policy, giving effect to all parts so as to give a reasonable meaning to the terms. Stone v. Royal Ins. Co., 211 N.J.Super. 246, 248, 511 A.2d 717, 718 (App.Div.1986); Tooker v. Hartford Acc. & Indemn. Co., 128 N.J.Super. 217, 222-223, 319 A.2d 743, 745-746 (App.Div.1974). When the terms of the contract are clear and unambiguous, the court must enforce the contract as it is written; the court cannot make a better contract for parties than the one that they themselves agreed to. Stone, supra, 211 N.J.Super. at 248, 511 A.2d at 718; Flynn v. Hartford Fire Ins. Co. 146 N.J.Super. 484, 488, 370 A.2d 61, 63-64 (App.Div.), certif. denied 75 N.J. 5, 379 A.2d 236 (1977).
However, where an ambiguity exists, it must be resolved against the insurer. DiOrio v. New Jersey Manufacturers Ins. Company, 79 N.J. 257, 269, 398 A.2d 1274, 1280 (1979). If the controlling language of the policy will support two meanings, one favorable to the insurer and one favorable to the insured, the interpretation supporting coverage will be applied. Corcoran v. Hartford Fire Ins. Co., 132 N.J.Super. 234, 243, 333 A.2d 293, 298 (App.Div.1975). Yet, an insurance policy is not ambiguous merely because two conflicting interpretations have been offered by the litigants. Rosario v. Haywood, 351 N.J.Super. 521, 530-531, 799 A.2d 32, 38, 39 (App.Div.2002), citing Powell v. Alemaz, Inc., 335 N.J.Super. 33, 44, 760 A.2d 1141, 1147 (App.Div.2000). A genuine ambiguity exists when the "phrasing of the policy is so confusing that the average policyholder cannot make out the boundaries of coverage." Lee v. General Accident Ins. Co., 337 N.J.Super. 509, 513, 767 A.2d 985, 987 (App.Div.2001).
Even if a particular phrase or term is capable of being interpreted in the manner sought by the insurer, "where another interpretation favorable to the insured reasonably can be made that construction must be applied." Ellmex Const. Co., Inc. v. Republic Ins. Co., 202 N.J.Super. 195, 204, 494 A.2d 339, 344 (App.Div.1985), certif. denied, 103 N.J. 453, 511 A.2d 639 (1986). In this regard, coverage clauses should be interpreted liberally, whereas those of exclusion should be strictly construed. Butler v. Bonner & Barnewall, Inc., 56 N.J. 567, 576, 267 A.2d 527, 532 (1970); Ellmex Constr. Co., Inc., supra, 202 N.J.Super. at 205, 494 A.2d at 344. Finally, insurance contracts are to be construed *699 in a manner that recognizes the reasonable expectation of the insured. Zuckerman v. Nat. Union Fire Ins., 100 N.J. 304, 320-21, 495 A.2d 395, 404 (1985).
Governed by these principles, we conclude that mold damage caused by a covered event is covered under the Selective policy. On the other hand, losses caused by mold may be excluded.
Mold can be both a loss and a cause of loss. Liristis v. American Family Mut. Ins. Co., 204 Ariz. 140, 61 P.3d 22, 25 (Ct.App.2002). Cf. Phillips Home Builders, Inc. v. Travelers Ins. Co., 700 A.2d 127, 129-30 (Del.1997). This distinction between mold damage and loss caused by mold is supported by the very language of Selective's policy: "[w]e do not insure, however, for loss caused by ... mold ..." (emphasis added). This language does not exclude all mold. Rather, it excludes loss "caused by" or resulting from mold. The language clearly focuses on "cause" of the loss, conveying the intention to exclude mold as a cause of loss. But mold which is the loss is not mentioned. If Selective had intended to exclude not only losses caused by mold, but also mold itself, it could have easily expressed that intention.
As noted, where the insured's loss can be viewed in two ways, basic principles of insurance law, instructing us to interpret coverage provisions broadly and to construe exclusions and limitations narrowly, require that we view this loss in the manner that brings it within the policy's coverage. See, e.g., Progressive Cas. Ins. Co. v. Hurley, 166 N.J. 260, 272-74, 765 A.2d 195, 201-02 (2001); Gibson v. Callaghan, 158 N.J. 662, 669-71, 730 A.2d 1278, 1282-83 (1999). And to the extent the policy terms at issue here are ambiguous, long-accepted principles of interpretation applicable to insurance contracts require us to construe this policy language against the drafter, in favor of the insured, and in accordance with the insured's reasonable expectations. See, e.g., Gibson v. Callaghan, supra, 158 N.J. at 669-71, 730 A.2d at 1282-83; Salem Group v. Oliver, 128 N.J. 1, 4, 607 A.2d 138, 139 (1992).
We, therefore, conclude that if plaintiffs prove the mold resulted from a covered peril, then the cost of removing the mold is not a loss separate from, or caused by, the mold itself, but rather is within the coverage provided to the homeowners under defendant's policy. In other words, when a covered event causes mold, the mold damage includes the cost of removal.
Consequently, the next issue we address is whether the mold and other damage claimed by plaintiffs was caused by a covered peril or a covered cause of loss. In this regard, plaintiffs claim the damage to their home was a direct physical loss from the June 16, 2001 rainstorm and consequent water intrusion. Defendants counter that the damage resulted from one or more excluded causes, or was actually previous damage from prior water leaks. Because a question of fact is presented as to whether some or all of the damage, including mold, was caused by the rainstorm, summary judgment was inappropriate.
By the terms of Selective's policy, every risk of direct physical damage is a covered cause of loss unless a particular cause of loss is listed in the exclusions. Here, defendant points to the policy exclusion for faulty design, workmanship and maintenance, which it claims to be the primary cause of plaintiffs' loss, barring their recovery even if included causes contributed to their damage. We disagree.
The fact that two or more identifiable causesone a covered event and one excludedmay contribute to a single property loss does not necessarily bar coverage. In the first place, the Selective policy *700 does not contain an anti-concurrent or anti-sequential clause in Exclusion 2a dealing with faulty design, workmanship and maintenance, which would exclude coverage when a prescribed excluded peril, alongside a covered peril, either simultaneously or sequentially, causes damage to the insured. See Assurance Co. of America, Inc. v. Jay-Mar, Inc., 38 F.Supp.2d 349, 352-354 (D.N.J.1999). Significantly, however, Selective did include such an anti-sequential and anti-concurrent clause in Exclusion 1 for Earth Movement, etc., evidencing a clear intention to bar coverage in the latter, but not the former.
Moreover, even where included and excluded causes occur concurrently, it is for the factfinder to determine which part of the damage was due to the included cause of loss and for which the insured can recover. Brindley v. Firemen's Ins. Co. of Newark, N.J., 35 N.J.Super. 1, 6, 113 A.2d 53, 56 (App.Div.1955); see also Newman v. Great Am. Ins. Co., 86 N.J.Super. 391, 403, 207 A.2d 167 (App.Div.1965) (following Brindley). And with regard to sequential causes of loss, our courts have determined that an insured deserves coverage where the included cause of loss is either the first or last step in the chain of causation which leads to the loss. See Franklin Packaging Co. v. Cal. Union Ins. Co., 171 N.J.Super. 188, 191, 408 A.2d 448 (App.Div.1979) (quoting 5 Appleman, Insurance Law and Practice § 3083 at 309-311 (1970) for the proposition that "recovery may be allowed where the insured risk was the last step in the chain of causation set in motion by an uninsured peril, or [w]here the insured risk itself set into operation a chain of causation in which the last step may have been an excepted risk."); Stone v. Royal Ins. Co., supra, 211 N.J.Super. at 251, 511 A.2d 717 (following Franklin Packaging); Ariston Airline Catering Supply Co., Inc. v. Forbes, 211 N.J.Super. 472, 487, 511 A.2d 1278 (Law Div.1986) (following Franklin Packaging).
Regardless of whether the multiple causes here may be considered "concurrent" or "sequential," and irrespective of the applicability of the proximate cause analysis embodied in the Appleman's Rule, there remains a factual question as to the actual cause of the damage to plaintiffs' home, namely whether plaintiffs sustained a direct physical loss proximately caused by the unusual severity of the June 16, 2001 rainstorm. Clearly, issues of causation are for the jury to resolve. Verdicchio v. Ricca, 179 N.J. 1, 24-25, 843 A.2d 1042, 1056-57 (2004); Scafidi v. Seiler, 119 N.J. 93, 101, 574 A.2d 398, 401-02 (1990); Kulas v. Pub. Serv. Elec. & Gas Co., 41 N.J. 311, 319-20, 196 A.2d 769, 773-74 (1964). Here, since the parties disagree, and the proofs conflict, the factual issue presented of causal connectionwhether some or all of plaintiffs' loss was caused by the June 16, 2001 rainstormmust be decided by the factfinder on a complete record. Accordingly, we reverse the grant of summary judgment in favor of Selective and remand for further proceedings consistent with this opinion.
Reversed and remanded.
NOTES
[1] Plaintiffs also named Hovnanian as a defendant and sought damages for faulty design and workmanship. On behalf of their children, they also sought damages for personal injury and emotional distress caused by toxic fungi and mold. Plaintiffs and Hovnanian eventually settled some of those claims.