**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0170-15T1

SCHULTZ FURRIERS, INC.,

    Plaintiff-Appellant,

v.

TRAVELERS CASUALTY INSURANCE
COMPANY OF AMERICA,

    Defendant-Respondent.

_____

Argued April 25, 2017 — Decided May 3, 2017

Before Judges Yannotti, Fasciale and
Sapp-Peterson.

On appeal from Superior Court of New Jersey,
Law Division, Essex County, Docket No. L-2281-
13.

Mauro C. Casci argued the cause for appellant
(Law Offices of Mauro C. Casci, attorneys; Mr.
Casci, on the brief).

Christopher S. Finazzo argued the cause for
respondent (Finazzo, Cossolini, O'Leary,
Meola & Hager, L.L.C., attorneys; Rachel R.
Hager, on the brief).

PER CURIAM

    In this insurance declaratory judgment lawsuit, Schultz

Furriers, Inc. (plaintiff) appeals from two July 24, 2015 orders:

one granting Travelers Casualty Insurance Company of America's (defendant) motion for summary judgment; and the other denying plaintiff's cross-motion for summary judgment. We affirm.

Plaintiff leased the premises and operated a business selling luxury outerwear and fur garments, in addition to garment cleaning, storage, and repair services. Plaintiff obtained a commercial insurance policy from defendant covering certain losses pertaining to that business. The effective date of the insurance policy was from October 31, 2011 to October 31, 2012.

In October 2012, Superstorm Sandy knocked down certain electrical transformers, which disrupted the power supply, and caused plaintiff to close its business. Plaintiff filed an insurance claim with defendant seeking coverage associated with its business interruption. Defendant disclaimed coverage, and plaintiff filed this complaint.

In pre-trial discovery, plaintiff produced documents establishing that its business was closed due to the power outage from October 29, 2012 through November 5, 2012. Defendant, relying on a "Power Pac Endorsement" in the insurance policy, tendered plaintiff $2500 for the business loss. Although plaintiff sought coverage for more than $2500, defendant concluded that this payment constituted the maximum amount of insurance coverage for the business interruption. In issuing the orders under review, the

judge agreed with defendant's interpretation of the insurance policy and rendered a comprehensive written decision in which he analyzed the pertinent policy language.

On appeal, plaintiff argues the language of the insurance policy is ambiguous; the insurance policy is an "all risk" policy and the burden of proving an exclusion rests with defendant; plaintiff is entitled to insurance coverage under the civil authority section of the policy; and defendant breached its covenant of good faith and fair dealing.

Summary judgment may be granted when, considering the evidence in the light most favorable to the non-moving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. R. 4:46-2(c); see also Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995). When reviewing an order granting summary judgment, this court applies "the same standard governing the trial court." Oyola v. Liu, 431 N.J. Super. 493, 497 (App. Div.), certif. denied, 216 N.J. 86 (2013).

The interpretation of insurance contracts is a matter of law and subject to de novo review. Sealed Air Corp. v. Royal Indem. Co., 404 N.J. Super. 363, 375 (App. Div.), certif. denied, 196 N.J. 601 (2008). This court owes no deference to the motion judge's conclusions on issues of law. Manalapan Realty, L.P. v.

Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995). Here, the question on appeal is a legal issue pertaining to the insurance policy language.

"Insurance policies are construed in accordance with principles that govern the interpretation of contracts; the parties' agreement 'will be enforced as written when its terms are clear in order that the expectations of the parties will be fulfilled.'" Mem'l Props., LLC v. Zurich Am. Ins. Co., 210 N.J. 512, 525 (2012) (quoting Flomerfelt v. Cardiello, 202 N.J. 432, 441 (2010)). "The terms of insurance contracts are given their 'plain and ordinary meaning,' with ambiguities resolved in favor of the insured." Ibid. (quoting Flomerfelt, supra, 202 N.J. at 441). Therefore, insurance policies "should be construed liberally in [the insured's] favor to the end that coverage is afforded to the full extent that any fair interpretation will allow." Longobardi v. Chubb Ins. Co., 121 N.J. 530, 537 (1990) (alteration in original) (quoting Kievit v. Loyal Protective Life Ins. Co., 34 N.J. 475, 482 (1961)).

"Although courts should construe insurance policies in favor of the insured, they 'should not write for the insured a better policy of insurance than the one purchased.'" Ibid. (quoting Walker Rogge, Inc. v. Chelsea Title & Guar. Co., 116 N.J. 517, 529 (1989)). "[I]nsurance contracts are to be construed in a manner

that recognizes the reasonable expectation of the insured." Simonetti v. Selective Ins. Co., 372 N.J. Super. 421, 429 (App. Div. 2004). Moreover, "[w]hen an insurance carrier puts in issue its coverage of a loss under a contract of insurance by relying on an exclusionary clause, it bears a substantial burden of demonstrating that the loss falls outside the scope of coverage." United Rental Equip. Co. v. Aetna Life & Cas. Ins. Co., 74 N.J. 92, 99 (1977).

Pursuant to the Business Income and Extra Expense section of the insurance policy, defendant would have been obligated to pay for actual loss of business income caused by the direct physical loss of or damage to the property at the described premises. Plaintiff alleged, however, that the business loss resulted from the downed transformers offsite, not direct physical damage to the leased premises.

Moreover, the insurance policy also expressly excluded loss or damage caused "directly or indirectly" by the "failure or fluctuation" of power or other utility services "if the cause of the failure or fluctuation occurs away from the described premises." The policy stated in relevant part:

> B. EXCLUSIONS
>
> 1. We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded

regardless of any other cause or event that contributes concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.

. . . .

e. Utility Services

The failure or fluctuation of power or other utility service supplied to the described premises, however caused, if the cause of the failure or fluctuation occurs away from the described premises.

But if the failure or fluctuation of power or other utility service results in a Covered Cause of Loss, we will pay for the loss or damage resulting from that Covered Cause of Loss.

As a result, these provisions in the insurance policy specifically excluded the claimed loss.

Plaintiff argues that it was entitled to insurance coverage under the extension for Equipment Breakdown Coverage language of the policy. However, this language also provides no basis for coverage. The pertinent sections of the insurance policy as to this argument include:

7. Coverage Extensions

. . . .

i. Equipment Breakdown

(1) When a Limit of Insurance is shown in the Declarations for Building or Business Personal Property at the described premises, you may

6

extend that insurance to apply to direct physical loss of or damage to Covered Property at the described premises caused by or resulting from a "breakdown" to "covered equipment[."]

With respect to otherwise covered Business Income and Extra Expense, "breakdown" to "covered equipment" will be considered a Covered Cause of Loss.

If an initial "breakdown" causes other "breakdowns", all will be considered one "breakdown[."] All "breakdowns" that manifest themselves at the same time and are the result of the same cause will also be considered one "breakdown[."]

(2) Under this Coverage Extension, the following coverages also apply:

. . .

(c) Service Interruption

When the Declarations show that you have coverage for Business Income and Extra Expense, you may extend that insurance to apply to loss caused by or resulting from a "breakdown" to equipment that is owned, operated or controlled by a local public or private utility or distributor that directly generates, transmits, distributes or provides the following utility services:

(i) "Water Supply Services";
(ii) "Communication Supply Services"; or
(iii) "Power Supply Services[."]

The policy defines "breakdown" and "power supply services" as follows:

G. Property Definitions

2. "Breakdown"

a. Means:

(1) Failure of pressure or vacuum equipment;

(2) Mechanical failure, including rupture or bursting caused by centrifugal force; or

(3) Electrical failure including arcing; that causes physical damage to "covered equipment" and necessitates its repair or replacement; and

b. Does not mean:

(1) Malfunction, including but not limited to adjustment, alignment, calibration, cleaning or modification;

(2) Leakage at any valve, fitting, shaft seal, gland packing, joint or connection;

(3) Damage to any vacuum tube, gas tube, or brush;

(4) Damage to any structure or foundation supporting the "covered equipment" or any of its parts;

(5) The functioning of any safety or protective device; or

(6) The cracking of any part on any internal combustion gas turbine exposed to the products of combustion.

. . .

22. "Power Supply Services"

a. Means the following types of property supplying electricity, steam or gas to the described premises:

A-0170-15T1

(1) Utility generating plants;
(2) Switching stations;
(3) Substations;
(4) Transformers; and
(5) Transmission lines; and

b. Does not mean overhead transmission lines.

An endorsement to the insurance policy, which was also issued

at the inception of the policy, stated:

> EQUIPMENT BREAKDOWN — SERVICE INTERRUPTION LIMITATION
> This endorsement modifies insurance provided under the following:
> BUSINESSOWNERS PROPERTY COVERAGE SPECIAL FORM
>
> A. The BUSINESSOWNERS PROPERTY COVERAGE SPECIAL FORM is changed as follows:
>
> 1. The following is added to paragraph A.7. Coverage Extensions i. Equipment Breakdown:
>
> (9) With respect to Service Interruption coverage, we will not pay under this Coverage Extension for loss or damage caused by or resulting from any of the following:
>
> (a) Fire;
> (b) Lightning;
> (c) Windstorm or hail;
> (d) Explosion (except for steam or centrifugal explosion);
> (e) Smoke;
> (f) Aircraft or vehicles;
> (g) Riot or civil commotion;
> (h) Vandalism;
> (i) Sprinkler Leakage;
> (j) Falling objects;
> (k) Weight of snow, ice or sleet;
> (l) Freezing; or
> (m) Collapse.
>
> [(Emphasis added).]

A-0170-15T1

The language relied upon by plaintiff covers business losses resulting from the breakdown of equipment owned, operated or controlled by a public utility. Plaintiff, however, did not produce any credible evidence to raise a factual dispute to establish that its business losses were due to a breakdown of equipment as the policy has defined that term. Moreover, the policy expressly excluded business losses resulting from a windstorm.

On January 9, 2012, defendant modified the insurance policy by attaching a "Power Pac Endorsement," on which defendant relied to fully pay plaintiff's claim. The parties dispute whether the Power Pac Endorsement increased or limited insurance coverage under the policy. The Power Pac Endorsement states:

> This endorsement modifies insurance provided under the following:
> BUSINESSOWNERS PROPERTY COVERAGE SPECIAL FORM
>
> A. The BUSINESSOWNERS PROPERTY COVERAGE SPECIAL FORM is changed as follows:
>
> . . .
>
> 8. The following Coverage Extensions are added:
>
> . . .
>
> c. Utility Services — Time Element
>
> (1) When the Declarations show that you have coverage for Business Income and Extra

Expense, you may extend that insurance to apply to the loss of Business Income or Extra Expense caused by the interruption of service to the described premises. The interruption must result from direct physical loss or damage by a Covered Cause of Loss to the following property not on the described premises:

(a) "Water Supply Services";
(b) "Communication Supply Services"; or
(c) "Power Supply Services[."]

(2) We will pay the actual loss sustained from the initial time of service(s) failure at the described premises but only when the service interruption at the described premises exceeds 24 hours immediately following the direct physical loss or damage. Coverage does not apply to any reduction of income after service has been restored to your premises.

(3) The most we will pay for loss under this Coverage Extension in any one occurrence is $2,500 at each described premises.

We agree with defendant, as did the motion judge, that the Power Pac Endorsement extended rather than limited insurance coverage. Without this endorsement, plaintiff was not entitled to insurance coverage for its power outage. That is so because the language of the Equipment Breakdown/Service Interruption Limitation unambiguously excluded coverage for loss or damage caused by windstorms.

The Power Pac Endorsement allowed plaintiff's claim and capped the amount of insurance coverage. It provided $2500 of coverage for the type of loss sustained by plaintiff.

11

Consequently, defendant satisfied its obligation under the policy by paying plaintiff $2500 for business interruption due to power outage.

We conclude that plaintiff's remaining arguments are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E). We add the following brief remarks.

Plaintiff is not entitled to insurance coverage under the Civil Authority Extension portion of the policy. The civil authority section allows coverage for losses "caused by action of civil authority that prohibits access to the described premises." Plaintiff concedes it would be required to show that access was "totally and completely prevented, i.e. made impossible." Such is not the case here. Plaintiff's owner testified that he had accessed the building himself shortly after the storm and before the streets were cleared of debris. The town's fire department also verified that although many trees fell and blocked roads, there were alternate routes accessible if a road was completely blocked.

Finally, there exists no evidence that defendant breached its covenant of good faith and fair dealing with plaintiff. As we have stated, the insured "must establish the merits of his or her claim for benefits. If there is a valid question of coverage, i.e., the claim is 'fairly debatable,' the insurer bears no

liability for bad faith." <u>Wacker-Ciocco v. Gov't Emps. Ins. Co.</u>, 439 <u>N.J. Super.</u> 603, 611 (App. Div. 2015) (quoting <u>Pickett v. Lloyd's</u>, 131 <u>N.J.</u> 457, 473-74 (1993)).  Defendant denied plaintiff's claims beyond the $2500 cap in accordance with the terms and conditions of the insurance policy.  There is no evidence of bad faith on behalf of defendant.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION