**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3868-17T1

ESTATE OF LOUIS F. KEPPEL,
deceased, and DOLORES GUTTMANN
and THOMAS LOIKITH, as
Co-Administrators of the ESTATE
OF LOUIS F. KEPPEL,

     Plaintiffs-Appellants,

v.

ANGELA'S ANGELS HOME
HEALTHCARE, ANGELA'S
ANGELS, LLC, and DONNA
THOMAS,

     Defendants,

and

NAUTILUS INSURANCE GROUP,[1]

     Defendant-Respondent.

_____

---

[1] The insurance company defendant was incorrectly identified in the complaint. The correct designation for this defendant is Nautilus Insurance Company.

Argued April 3, 2019 – Decided May 9, 2019

Before Judges Koblitz, Currier and Mayer.

On appeal from Superior Court of New Jersey, Law Division, Bergen County, Docket No. L-3325-16.

Peter E. Mueller argued the cause for appellants (Harwood Lloyd, LLC, attorneys; Peter E. Mueller, of counsel and on the briefs; Mark D. Marino, on the briefs).

Justin N. Kinney argued the cause for respondent (Kinney Lisovicz Reilly & Wolff PC, attorneys; Justin N. Kinney, of counsel and on the brief; Corey G. Jeffers, on the brief).

PER CURIAM

Plaintiffs Estate of Louis F. Keppel, Dolores Guttmann, and Thomas Loikith appeal from a March 19, 2018 order granting summary judgment in favor of defendant Nautilus Insurance Company (Nautilus). We affirm.

The matter arose because defendant Donna Thomas (Thomas), who was employed as a home health aide by defendants Angela's Angels Home Healthcare and Angela's Angels, LLC (Angela's Angels), misappropriated 192 checks from Louis Keppel over a two-year period.[2]

---

[2] Thomas either forged Keppel's name on the checks or influenced him to write checks payable to herself and others.

A-3868-17T1

Keppel died intestate, and Guttmann and Loikith were appointed co-administrators of his estate. Guttmann and Loikith discovered cashed checks drawn on Keppel's account, made payable to Thomas, her son, her son's girlfriend, "cash," and DET Medical PC, amounting to nearly $225,000.

Angela's Angels purchased comprehensive general liability (CGL) insurance policies from Nautilus covering the time period when Keppel's checks were cashed. Under the insurance policies, Nautilus was obligated to pay for "property damage," provided the injury occurred during the coverage period. The policies defined "property damage" to mean either "[p]hysical injury to tangible property, including all resulting loss of use of that property[,]" or "loss of use of tangible property that is not physically injured."

Angela's Angels made a claim under the insurance policies related to the cashing of Keppel's checks. Nautilus denied coverage for several reasons, including that the claim was not the result of "property damage" because money is not "tangible property."

Guttmann and Loikith filed a lawsuit against Angela's Angels and Thomas.[3] Angela's Angels filed crossclaims against Nautilus for coverage and indemnification related to plaintiffs' claims. Angela's Angels settled with

---

[3] Thomas never filed an answer and default was entered.

A-3868-17T1

plaintiffs for a nominal sum and assigned their rights under the Nautilus policies to plaintiffs to pursue coverage.

After discovery, plaintiffs filed a motion for summary judgment, requesting Nautilus indemnify Keppel's estate for the money taken by Thomas. Nautilus filed a cross-motion for summary judgment, seeking a declaration that there was no coverage for the loss.

On March 19, 2018, after hearing the arguments of counsel, the judge denied plaintiffs' motion and granted Nautilus's cross-motion. The judge found Nautilus was not required to cover the loss from Thomas's cashing of Keppel's checks because the term "tangible property" did not apply to checks or money. She also determined that the money sought to be recovered did not constitute "all loss of use" of the checks. The judge held neither the money nor the checks constituted "tangible property" under the policies based on a "common sense or obvious interpretation." The judge concluded that plaintiffs:

> did not demonstrate actual[] damage to tangible property or the losses that the plaintiff[s are] seeking do not flow from damage to tangible property, even if the checks could be considered in some respect tangible property. That is[,] a piece of the paper is tangible and it's a piece of property. But, the concept of what it stands for as being representative of money in the bank is not tangible.

A-3868-17T1

The judge determined Nautilus had no duty to defend or indemnify Angela's Angels, and dismissed plaintiffs' complaint with prejudice.

On appeal, plaintiffs assert money constitutes "tangible property" under the Nautilus policies, and seek consequential damages flowing from the loss of use of tangible property. Plaintiffs also contend the judge erred in dismissing their other claims against Nautilus, including the bad faith claim.

We review the interpretation of a contract, including an insurance policy, de novo. Simonetti v. Selective Ins. Co., 372 N.J. Super. 421, 428 (App. Div. 2004). We construe insurance policies "from the language of the policy, giving effect to all parts so as to give reasonable meaning to the terms." Ibid. (quoting Stone v. Royal Ins. Co., 211 N.J. Super. 246, 248 (App. Div. 1986)).

In determining "the meaning of provisions in an insurance contract, courts first look to the plain meaning of the language at issue . . . . If the language is clear, that is the end of the inquiry." Oxford Realty Grp. Cedar v. Travelers Excess & Surplus Lines Co., 229 N.J. 196, 212 (2017) (quoting Chubb Custom Ins. Co. v. Prudential Ins. Co. of Am., 195 N.J. 231, 238 (2008)). When an insurance contract's terms are clear and unambiguous, courts must enforce the policy as written, using the "plain, ordinary meaning" of the words. Zacarias v. Allstate Ins. Co., 168 N.J. 590, 595 (2001). Courts should not write a better

policy than the one purchased by the insured. <u>Walker Rogge, Inc. v. Chelsea Title & Guar. Co.</u>, 116 N.J. 517, 529 (1989).

The parties agree the Nautilus insurance policies are unambiguous. However, because the Nautilus policies do not define the term "tangible property," we must apply the plain and ordinary meaning of that term to determine whether plaintiffs' claim constitutes "property damage" to afford coverage.

We consider case law from New Jersey and other jurisdictions in defining "tangible property."[4] New Jersey courts have held that money, as a medium of exchange, is not tangible property. <u>See</u> <u>Armstrong v. Taxation Div. Dir.</u>, 5 N.J. Tax 117, 125 (Tax 1983) (holding "[w]hen used as a vehicle for investment in precious metals, a coin is tangible personal property. When used as a medium of exchange, a coin has an exchange value not related to its metal content and is intangible personal property . . . ."); <u>see also</u> <u>Duke Power Co. v. State Bd. of Tax Appeals</u>, 129 N.J.L. 449, 450 (1943) (referring to cash in a bank and cash on hand as "intangible personal property").

---

[4] We are permitted to consider judicial decisions from federal and other state courts to ascertain the plain and ordinary meaning of an undefined term in an insurance policy. <u>See</u> <u>Morton Int'l v. Gen. Accident Ins. Co.</u>, 134 N.J. 1, 27 (1993) (relying on federal and state court decisions in defining the term "damages").

A-3868-17T1

Courts in other states similarly hold money is not tangible property. See, e.g., Mack v. Nationwide Mut. Fire Ins. Co., 517 S.E.2d 839, 840-41 (Ga. Ct. App. 1999) (holding money is not tangible property affording coverage under a CGL policy because "money exists only as a number recorded on a computer"); Snug Harbor, Ltd. v. Zurich Ins., 968 F.2d 538, 542 (5th Cir. 1992) (noting, by way of example, the loss of the use of money does not constitute the loss of use of tangible property).

We may also refer to dictionaries to determine the plain and ordinary meaning of words. Black's Law Dictionary defines "tangible property" as "[p]roperty that has physical form and characteristics." Black's Law Dictionary 1412 (10th ed. 2014). Similarly, Black's defines "tangible personal property" as "[c]orporeal personal property of any kind; personal property that can be seen, weighed, measured, felt, touched, or in any other way perceived by the senses . . . ." Ibid. According to Merriam Webster, "tangible property" is defined as "property that has a tangible and corporeal existence and intrinsic economic value because of it." Tangible property, Merriam-Webster Online Dictionary (last visited Apr. 29, 2019). In accordance with these definitions, "tangible property" is physical property that can be perceived by the senses and has genuine monetary value.

 A-3868-17T1

Applying these definitions, plaintiffs' claim does not involve injury to tangible property. The loss of stolen money does not constitute "property damage" because money, or the checks representing money, is not "tangible property." While checks can be touched, the checks themselves have no intrinsic monetary value and suffered no injury upon being cashed by Thomas.

Checks represent money in a bank that exists in digital form in a computer database in the name of the account holder. Checks are a representation of money held by a bank and are simply a medium of exchange. A medium of exchange, such as coins or dollar bills, is not tangible property. Thus, the checks misappropriated by Thomas and then cashed without permission are not property damage as defined in the Nautilus policies.

Because we reject plaintiffs' claim that the checks constitute tangible property, the money obtained as a result of Thomas cashing the checks does not constitute consequential damages. The loss of use of a check does not equate with the loss of money. Here, there is no injury to the checks, and the loss of use relates to the money misappropriated. Therefore, there is no property damage claim under the Nautilus policies.

Because plaintiffs' claims are not covered under the Nautilus policies, we need not address plaintiffs' remaining arguments.

A-3868-17T1

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

9