# UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

No. 25-2091

RIYA DEV CORP., d/b/a Hallmark Inn,
Appellant

v.

AMGUARD INSURANCE CO.

_____

On Appeal from the U.S. District Court, D.N.J.
Chief Judge Renée M. Bumb, No. 1:22-cv-06415

Before: BIBAS, CHUNG, and MASCOTT, *Circuit Judges*
Submitted: June 26, 2026; Filed: June 26, 2026

_____

NONPRECEDENTIAL OPINION[*]

BIBAS, *Circuit Judge*. An ounce of prevention is worth a pound of cure; roof repairs are no exception. In 2011, Riya Dev Corporation bought a motel in a New Jersey suburb of Philadelphia and has run it since then. Riya Dev took out a business-owner's insurance policy from AmGUARD Insurance. The policy provided all-risk property coverage but excluded various causes of loss, such as deterioration, weeks-long water seepage, and "[w]ear and tear." JA 217.

The motel's asphalt-shingled roof was not in great shape. After buying the motel, Riya Dev did not repair or replace the roof. It made only "isolated repairs" in 2011 and 2019. JA 227. Aerial and street-view photos from 2013 through early 2021 showed multiple discrete roof repairs as well as damage, including exposed wood. And a storm at the end of 2020

_____

[*]This is not an opinion of the full Court and, under 3d Cir. IOP 5.7, is not binding precedent.

further damaged the roof. (Though Riya Dev filed an insurance claim for that storm, it was denied and Riya Dev did not challenge that denial.)

In September 2021, Hurricane Ida hit New Jersey. Riya Dev filed an insurance claim, seeking coverage for damage to the motel's roof. When AmGUARD denied the claim, Riya Dev sued to challenge this denial. The District Court granted AmGUARD summary judgment, holding that Riya Dev "ha[d] not introduced sufficient evidence to disentangle any wind damage caused by Hurricane Ida from any previously existing damage to the roof to establish that Hurricane Ida, either solely or substantially, proximately caused the loss." JA 17. Reviewing de novo, we will affirm. *Tundo v. County of Passaic*, 923 F.3d 283, 286–87 (3d Cir. 2019) (standard of review).

If the roof damage was fortuitous under the all-risk policy, AmGUARD would have the burden of proving that Riya Dev's claim was excluded as "loss or damage caused directly or indirectly" (at least in part) by wear and tear, deterioration, or long-term water seepage. JA 213; *Princeton Ins. Co. v. Chunmuang*, 698 A.2d 9, 16–17 (N.J. 1997) ("[T]he burden is on the insurer to bring the case within the exclusion."). If AmGUARD did carry that burden, the damage would not be covered, even when New Jersey law would otherwise allow for partial recovery due to "a covered peril … simultaneously or sequentially, causing damage." *Simonetti v. Selective Ins. Co.*, 859 A.2d 694, 700 (N.J. Super. Ct. App. Div. 2004). Those exclusions apply "regardless of any other cause or event [namely, Hurricane Ida] that contribute[d] concurrently or in any sequence to the loss." JA 213. As long as AmGUARD showed that an excluded cause "contributed to" Riya Dev's property damage,

it "satisfied [its] burden to show that the exclusions applied." *Mac Prop. Grp. LLC & The Cake Boutique LLC v. Selective Fire & Cas. Ins. Co.*, 278 A.3d 272, 295 (N.J. Super. Ct. App. Div. 2022).

AmGUARD made that showing. After Riya Dev filed its 2020 claim, AmGUARD's engineering expert concluded that overdue maintenance and wear-and-tear, not the 2020 storm, was the culprit for the 2020 roof damage. Inspecting the roof after Hurricane Ida, the engineers found age-related wear and previous repairs: sagging, worn roof shingles, corroded nail pops, "advanced … deterioration" of wood cladding, a crack where the roof met one wall, previous patches, and layers of sealant. JA 230. Based on observing these conditions, interviewing the owner, and reviewing aerial and street-view photos from before the two storms, the engineers concluded that even in 2020, the roof was "beyond its useful service life" and showed "normal and anticipated long-term, age-related deterioration." JA 234. In short, the damage was caused by age; it was "not the result of a recent, single, or sudden weather event," like the 2020 storm. JA 226. Because damage caused "directly or indirectly" by age is excluded from coverage, AmGUARD denied the 2020 claim. JA 213. Riya Dev did not challenge the denial.

Before this litigation, but after Hurricane Ida, another engineering expert reached the same conclusion about Riya Dev's 2021 claim. He observed that the roof showed no evidence of damage from a one-time wind event. Nor was there evidence of hail damage from the hurricane. Rather, the expert found general shingle wear, shingle blistering (from sunlight), and patches, all suggesting that the roof was old, worn out, and "susceptible to

3

damage caused by less-than-design speed wind." Supp. App. 62. In short, this expert also found that the damage was ultimately caused by "age-related deterioration", not storms. *Id.* at 192. That is enough to exclude all the damage that Riya Dev claims.

Once AmGUARD made that showing, the burden then shifted to Riya Dev to offer specific evidence raising a genuine dispute that the hurricane was the sole cause of the damage. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Yet it failed to do so. Recall that the policy excluded damage caused sequentially or concurrently by covered and excluded perils. A jury would need to hear from an expert to understand whether the cause of the roof damage was Hurricane Ida, wear and tear, or some combination. *See Torres v. Schripps, Inc.*, 776 A.2d 915, 921 (N.J. Super. Ct. App. Div. 2001). And Riya Dev did offer its own engineering expert, Bill Halkiadakis. But even if his report was admissible, it created no genuine factual dispute about causation. He failed to explain why age-related deterioration was not at least partly responsible for the roof's damage, even after noting signs of wear, such as previously replaced shingles. Because Riya Dev's expert did nothing to rebut the findings of AmGUARD's two engineering experts that wear and tear played a role in the damage, no reasonable jury could side with it.

That lack of expert rebuttal distinguishes this case from the one New Jersey case on which Riya Dev primarily relies, as well as from the unpublished, non-New-Jersey-law per curiam that it cites. *See Simonetti*, 859 A.2d at 696 (noting that plaintiffs' expert engineer attributed water intrusion to poor workmanship during house construction); *Sky Harbor Atlanta Ne., LLC v. Affiliated FM Ins. Co.*, 2024 WL 4370727, at *2 (11th Cir. Oct. 2,

2024) (noting that, before buying hotel, insured had "retained multiple third-party experts," each of whom reported that hotel's overall condition was good and "found no major defects, deficiencies, or deferred maintenance," including no evidence of leaky windows, water damage, or microbes). Also, unlike Simonetti's policy, Riya Dev's policy includes anti-concurrent and anti-sequential causation clauses. *See* 859 A.2d at 700.

Though Riya Dev tries to fill its evidentiary gap with a lay insurance adjuster's report and an underwriter's failure to mention roof damage, both suffer from the same problem as Halkiadakis's report, and neither is a substitute for expert testimony. We will thus AFFIRM the District Court's summary judgment for AmGUARD.

One other matter bears note. Riya Dev's counsel, Daniel W. Ballard of the Merlin Law Group, submitted an opening brief that is largely recycled from his motion to reconsider below, with only tiny tweaks. A tipoff is that the Summary of Argument starts thus: "Riya Dev moves this Court for Reconsideration of its Order to correct clear error of law or to prevent manifest injustice." Appellant's Br. 13. The Appendix below reprints the first four pages of Appellant's argument section, using redlining to show how trivial those tweaks are. "[T]he copy-and-paste job[] before us reflect[s] a dereliction of duty, not an honest mistake." *Conboy v. U.S. Small Bus. Admin.*, 992 F.3d 153, 158 (3d Cir. 2021). We warn counsel not to do so again.

*Comparison of Appellant's Br. 16–20 with its Rule 59(e) motion below (D.I. 62-2) at 6–8. Additions in **bold**; subtractions ~~struck through~~.*

The fact that two or more identifiable causes—one a covered event and one excluded—may contribute to a single property loss does not necessarily bar coverage. <u>Simonetti.</u> at 431. Moreover, even where included and excluded causes occur concurrently, it is for the factfinder to determine which part of the damage was due to the included cause of loss and for which the insured can recover. <u>Brindley v. Firemen's Ins. Co. of Newark, N.J.</u>, 35 N.J.Super. 1, 6, 113 *A*.2d 53, 56 (App.Div.1955); see also <u>Newman v. Great Am. Ins. Co.</u>, 86 N.J.Super. 391, 403, 207 A.2d 167 (App.Div.1965) (following <u>Brindley</u>). And with regard to sequential causes of loss, our courts have determined that an insured deserves coverage where the included cause of loss is either the first or last step in the chain of causation which leads to the loss. See <u>Franklin Packaging Co. v. Cal. Union Ins. Co.</u>, 171 N.J.Super. 188, 191, 408 A.2d 448 (App.Div.1979), certif. denied, 84 N.J. 434, 420 A.2d 340 (1980) (quoting 5 Appleman, Insurance Law and Practice § 3083 at 309–311 (1970) for the proposition that "recovery may be allowed where the insured risk was the last step in the chain of causation set in motion by an uninsured peril, or [w]here the insured risk itself set into operation a chain of causation in which the last step may have been an excepted risk."); <u>Stone v. Royal Ins. Co.</u>, supra, 211 N.J.Super. at 251, 511 A.2d 717 (following <u>Franklin Packaging</u> ); <u>Ariston Airline Catering Supply Co., Inc. v. Forbes</u>, 211 N.J.Super. 472, 487, 511 A.2d 1278 (Law Div.1986) (following <u>Franklin Packaging</u>).

Simonetti involved a matter in which the insurance carrier was granted Summary Judgment by the trial court and appealed to the Appellate Division. Similar to this matter, the carrier in Simonetti denied the claim due to "faulty…design…workmanship…[and] maintenance". In Simonetti, prior to the loss, the insureds would have intermittent leaking from the same window which would usually occur after substantial rainfalls. The insureds in Simonetti reported the leaking to the insurance carrier but were advised by the carrier that the leaks were caused by "normal wear and tear". Subsequent to the denial for wear and tear, the insureds in Simonetti suffered a rainstorm to their property causing water damage throughout the entire home, including the den where the previous leaks had taken place. The carrier denied the loss based on wear and tear and inadequate maintenance. The insurance carrier filed a Motion for Summary Judgment and the trial court granted the Motion stating:

> "…here, the only thing that the big storm did was cause more damage because prior storms, presumably, by everybody's articulation, lesser storms, still caused the problems.
>
> So that, to me, the predominant cause in this was the faulty construction. And as such, there's an exclusion for that.

Simonetti at 427.

The homeowners appealed arguing the rainstorm caused damage to the home, a covered loss, irrespective of the prior intermittent leaks previously reported to the carrier and denied due to wear and tear. The homeowners, similar to ~~Plaintiff~~**Riya Dev** in this matter, argued the rainstorm was a "distinct occurrence" and the proximate cause of the

loss. Defendant in Simonetti, like **AmGUARD**~~Defendant~~ in this matter, argued the loss resulted from one or more excluded causes, including faulty design, workmanship, and maintenance, the same exclusions relied upon by **AmGUARD**~~Defendant~~ in this matter. Like **AmGUARD**~~Defendant~~ in this matter, the carrier in Simonetti argued that the maintenance issue, even if acting jointly with a covered peril, was the predominant cause of the loss which defeats coverage or was previous damage from prior water leaks.

The Simonetti Court concluded there was a question of fact as to whether some or all ~~of~~ the damage was caused by the rainstorm and stated the following:

> Regardless of whether the multiple causes here may be considered "concurrent" or "sequential," and irrespective of the applicability of the proximate cause analysis embodied in the Appleman's Rule, there remains a factual question as to the actual cause of the damage to plaintiffs' home, namely whether plaintiffs sustained a direct physical loss proximately caused by the unusual severity of the June 16, 2001 rainstorm. Clearly, issues of causation are for the jury to resolve. Verdicchio v. Ricca, 179 N.J. 1, 24–25, 843 A.2d 1042, 1056–57 (2004); Scafidi v. Seiler, 119 N.J. 93, 101, 574 A.2d 398, 401–02 (1990); Kulas v. Pub. Serv. Elec. & Gas Co., 41 N.J. 311, 319–20, 196 A.2d 769, 773–74 (1964). Here, since the parties disagree, and the proofs conflict, *the factual issue presented of causal connection—whether some or all of plaintiffs' loss was caused by the June 16, 2001 rainstorm—must be decided by the factfinder on a complete record.* Accordingly, we reverse the grant of summary judgment in favor of Selective and remand for further proceedings consistent with this opinion.

Simonetti at 432 (Emphasis added).

The facts in this matter follow the same fact pattern as Simonetti. There is an initial claim that is denied based on wear and tear, there is a subsequent claim made in relation to a storm that causes damage over and above any damage caused by the initial loss, and the carrier denies the subsequent loss on the position that the maintenance issue, even if acting

A3

jointly with a covered peril, was the predominant cause of the loss which defeats coverage or was actually previous damage from prior water leaks. However, despite Simonetti's opinion that this fact pattern and the causal connection is a matter to be preserved for the jury, th~~is~~e **District** Court has taken that determination out of the jury's hands by making its own determination that the **alleged** deteriorated condition proximately caused the loss and the not the rainstorm, as opined by ~~Plaintiff~~**Riya Dev**'s expert, Mr. Halkiadakis.

In its opinion, th~~is~~e **District** Court seemed to follow the opinion of 10 East Washington, an unpublished opinion. However, ~~Plaintiff~~**Riya Dev** contends th~~is~~e **District** Court should **have** follow**ed** the published and controlling opinion in Simonetti, which contained facts more in concert with the facts of this matter and ruled the causal connection argument is a factual issue and should be left for a jury's determination.

A4